**In the Matter of PROPERTY SEIZED FROM Gary Dean DeCAMP.**

**Gary Dean DeCamp, Appellant,**

v.

**State of Iowa, Appellee.**

**No. 91–1887.**

Supreme Court of Iowa.

Jan. 19, 1994.

Bonnie J. Campbell, Atty. Gen., Karen Doland, Asst. Atty. Gen., and Steven Oeth, County Atty., for appellee.

Jerry R. Foxhoven, Des Moines, for appellant.

Considered by LARSON, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

In this forfeiture proceeding, Gary Dean DeCamp appeals from a district court order forfeiting his truck, a 1978 Freightliner tractor, because the truck was allegedly used to facilitate drug sales. DeCamp challenges the order because he thinks (1) there was insufficient evidence to support the forfeiture, and (2) the district court impermissibly admitted into evidence statements attributed to alleged coconspirators. We transferred the case to our court of appeals which agreed with DeCamp and reversed. We granted the State's application for further review in which it urges us to reinstate the district court's decision.

After a careful review of the record, we conclude there was substantial evidence to support the forfeiture order and the admission of coconspirator statements. For these reasons, we vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts.

Gary Dean DeCamp and Wayne Benson knew each other. DeCamp testified that he stopped by Benson's rural Madrid home on the afternoon of August 29, 1991, to pick up some lumber and to check on a car stored at the residence.

DeCamp, a truck driver from De Soto, drove to the area in his truck. The Benson home is secluded and sits about three-quarters of a mile off the highway. DeCamp testified he could not negotiate the access road leading to the Benson's home so he parked his truck off the highway near the access road and walked the rest of the way.

DeCamp did not know that about two hours earlier state and federal agents had arrested Benson after buying a quarter pound of methamphetamine from him in an ongoing undercover drug operation. The agents were waiting for a search warrant for the Benson home when DeCamp walked into view. Benson, handcuffed, was sitting outside on a picnic table.

As DeCamp approached Benson, he was stopped and questioned by Dana Weir, a special agent with the Iowa division of narcotic enforcement. Weir questioned DeCamp for several minutes. In the conversation, DeCamp volunteered that he was (1) a trucker from De Soto, (2) at the Benson home to pick up some lumber, and (3) a prior user of amphetamines.

Weir noticed that DeCamp's eyes were bloodshot. His speech was slow and deliberate. Weir also noticed that DeCamp had a large bulge in the right pocket of his pants. Weir asked him what the bulge was, at which point DeCamp voluntarily withdrew what turned out to be two wads of money. Weir counted only one wad which consisted of $500 in twenty dollar bills. Evidence was presented indicating that DeCamp had a total of $800 or $900 in cash on his person at this time.

By now Weir was suspicious of DeCamp. Weir had previously heard from informants that the drug supplier for Benson and others was a trucker from De Soto. This, coupled with DeCamp's revelations, demeanor, and the large amount of money DeCamp had on him, convinced Weir that a search of DeCamp's truck would be necessary. Weir returned DeCamp's money. Weir then in-

structed two other agents—Kevin Farnsworth and Todd Pattison—to accompany DeCamp to his truck. DeCamp consented to a search of the truck.

When the trio arrived at DeCamp's truck, it was running and locked. DeCamp unlocked the driver's side door, entered the cab, and crossed to the passenger door, unlocking it. Pattison followed DeCamp into the cab. Farnsworth walked around the front of the truck and met DeCamp at the passenger door.

By now DeCamp was standing on the ground, emptying the truck's exterior storage compartment of its contents. Farnsworth observed the articles DeCamp was throwing to the ground. In the process, Farnsworth noticed a green plastic container, lying in the right-front tire track of DeCamp's truck. It was cylindrical and approximately two and one-half inches long. The container had not been run over and was not damaged or weathered in any way. The agents took the container. It contained 4.92 grams of methamphetamine, worth about $500.

After arresting DeCamp, the two agents handcuffed him and transported him to jail in Farnsworth's car.

At the jail, DeCamp only had $361 on his person. The next day Farnsworth and another agent returned to the area where DeCamp's truck had been parked. There, Farnsworth found a roll of money, wound tightly and secured with a rubber band. The roll contained $500 in twenty dollar bills.

## II. *Background Proceedings.*

Right after DeCamp's arrest, the State seized his truck. The next day the State filed a notice of forfeiture. *See* Iowa Code § 809.1(2) (1991). Several weeks later DeCamp filed an application for return of his truck.

Following a hearing, the district court entered an order approving forfeiture of DeCamp's truck. DeCamp appealed and we transferred the case to the court of appeals. The court of appeals reversed and remanded, concluding there was not substantial evidence that DeCamp's truck was involved in the transport or sale of drugs. Because the court of appeals found the State had not met its burden of proof of a conspiracy, it also concluded that Weir's testimony concerning the statement of one of the targets of the undercover drug operation did not fall within the coconspirator exception in Iowa Rule of Evidence 801(d)(2)(E).

We granted the State's application for further review of the court of appeal's decision. *See* Iowa R.App.P. 402.

## III. *Scope of Review.*

Although we disfavor forfeiture and construe forfeiture statutes strictly, we nevertheless interpret such statutes so as to promote their legitimate purpose. *State v. Dykes,* 471 N.W.2d 846, 847 (Iowa 1991). In forfeiture proceedings, the State has the burden to prove by a preponderance of the evidence that the property is forfeitable. Iowa Code § 809.11(1); *Dykes,* 471 N.W.2d at 847.

Under Iowa Code chapter 809, our review in forfeiture proceedings is for correction of errors at law. We therefore review the evidence in the light most favorable to sustaining the district court judgment. We construe the district court's findings liberally to support its result. Such findings are binding on us if supported by substantial evidence. *In re Property Seized from Rush,* 448 N.W.2d 472, 477 (Iowa 1989).

We say that evidence is substantial if the findings may be reasonably inferred from the evidence. To put it another way, we say evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. A possibility that inconsistent conclusions might be drawn from the same evidence does not preclude a finding from being supported by substantial evidence. *Id.*

That brings us to DeCamp's first challenge: there was insufficient evidence to support the forfeiture.

## IV. *Sufficiency of the Evidence.*

The district court ordered forfeiture of the truck under the following definition of

forfeitable property in Iowa Code section 809.1(2)(b):

Property which has been used or is intended to be used to facilitate the commission of a criminal offense....

We have interpreted the word "facilitate" in section 809.1 to require a substantial connection between the property seized and the crime. *In re Property Seized from Kaster*, 454 N.W.2d 876, 879 (Iowa 1990). Whether the seized property has such a nexus with the criminal activity is a fact question. *Id.*

■ The district court concluded the evidence supported a finding that DeCamp's truck was used to facilitate the commission of the crime of possession or sale of methamphetamine. Upon our review of the record, we reach the same conclusion.

It is true the evidence is mostly circumstantial, and DeCamp attempts to explain it away. Nevertheless, we think there are too many incriminating facts here to be explained away by mere coincidences. Some of the facts include (1) DeCamp's arrival on the scene with a large amount of cash, (2) DeCamp's demeanor consistent with recent drug use, and (3) DeCamp's concession to Weir that he had used amphetamines in the past.

The two most incriminating facts include (1) the discovery of $500 in twenty dollar bills at the scene of the truck search after jailors discovered DeCamp was missing the $500 and (2) the undamaged container containing methamphetamine lying in the right front tire track of DeCamp's truck. DeCamp would have us believe that someone came along and threw the $500 in the ditch and planted the container in the tire track. The more believable and obvious explanation is that DeCamp threw the money in the ditch and placed the container where it was found when the agents were not looking.

We should also keep in mind what had been happening in the days before the afternoon in question and the transaction that took place immediately before DeCamp arrived on the scene.

When the agents arrested Benson on August 29, that was the culmination of eight separate drug sales that took place in July and August. Two of the sales had taken place at the Benson home. On each occasion, the drug purchased was methamphetamine.

On August 29, several hours before DeCamp showed up, Weir—acting as an undercover agent—had purchased methamphetamine from Benson for $6000. Weir—an experienced narcotic undercover agent—testified that it is typical for a drug supplier to arrive at the location of the sale shortly after the sale occurs to collect the money.

Benson and a woman named McPherson had arranged the August 29 sale between Benson and Weir. Benson, McPherson, and a third individual, Boresi, were the targeted subjects in the ongoing undercover drug investigation. Before August 29, the trio had told Weir their source of the methamphetamine was a truck driver. Another individual who was cooperating in the drug investigation also told Weir that the source was a truck driver. In addition, this individual told Weir that the source was from De Soto.

Benson's telephone records showed numerous calls from Benson's home to DeCamp's home. Telephone records seized from DeCamp's home after his arrest show a number of calls from DeCamp's home to Benson's home. All the calls were made during the time the investigation was ongoing. In addition, DeCamp's records show an August 13, 1991, telephone call from his home to Weir's undercover number. Weir was using the undercover number to arrange narcotic transactions and had given the number to Benson.

Finally, Weir testified that it would take more than one person to ingest the amount of methamphetamine found in the container. Weir said that it would take a number of years for one individual to ingest the 4.92 grams of methamphetamine found. His opinion was that the 4.92 grams was an excessive quantity for personal use and for that reason he believed the amount to be a deliverable quantity.

## V. *Coconspirator Statements.*

■ Benson, Boresi, and McPherson told Weir that their source was a truck driver. Another individual told Weir the source was

a truck driver from De Soto. This individual initially arranged the sales between Weir and the trio of Benson, Boresi, and McPherson. Weir, however, arranged the last transaction in telephone conversations with Benson and McPherson.

DeCamp objected to this evidence on hearsay grounds. He recognizes that this evidence is admissible upon a showing that the statements were made during and in the furtherance of a conspiracy.

DeCamp argues that evidence other than the statements themselves must be presented to establish the conspiracy. DeCamp thinks such evidence is lacking and for that reason the district court erroneously admitted such statements and relied on them. He concludes there must be a reversal because—as he says—admission of hearsay evidence is presumptively prejudicial.

■ Iowa Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay "if [t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Before such a statement is admissible the district court must find by a preponderance of the evidence that a conspiracy to commit a crime existed involving the declarant and the nonoffering party. *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144, 152–53 (1987) (interpreting Federal Rule of Evidence 801(d)(2)(E), which is similar to Iowa Rule of Evidence 801(d)(2)(E)); *State v. Florie*, 411 N.W.2d 689, 695 (Iowa 1987). Such a finding is implicit when—as here— the district court admits the statement into evidence. *Florie*, 411 N.W.2d at 695.

■ The State must prove the conspiracy by evidence other than the challenged statement. In other words, the evidence relied on to establish the conspiracy must include some proof independent of the coconspirator's statement. *Id.* at 696. But in making the determination whether such independent proof has been shown, the district court need not completely ignore the coconspirator's statements. *Bourjaily*, 483 U.S. at 176–81, 107 S.Ct. at 2779–82, 97 L.Ed.2d at 153–56; *Florie*, 411 N.W.2d at 696. *Accord In re*

*Matter of Scott*, 508 N.W.2d 653, 655 (Iowa 1993).

DeCamp's objection raises the question whether the conspiracy was established by evidence other than the challenged statements. He raises no issue on appeal on whether the challenged statements were made in the course or in the furtherance of the conspiracy. So we need not consider those additional requirements to admissibility under Rule 801(d)(2)(E).

■ Our scope of review in reviewing the district court's determination that a conspiracy existed is governed by the substantial evidence test. *Florie*, 411 N.W.2d at 695. Our review of the record convinces us that there was substantial evidence to support the district court's implicit determination that Benson, Boresi, McPherson, the "cooperating" individual and DeCamp were engaged in a conspiracy that ultimately led to the last sale which formed the basis for the forfeiture order.

We think all of the cited circumstantial evidence—apart from the challenged statements—amply supports our conclusion. The district court, however, was not precluded from considering the challenged statements in deciding whether a conspiracy existed. The challenged statements were corroborated by independent evidence, consisting of the events that transpired right after Benson's arrest and the record of telephone calls that were in evidence. *See Bourjaily*, 483 U.S. at 180–81, 107 S.Ct. at 2781, 97 L.Ed.2d at 156 (existence of conspiracy and petitioner's participation in it partially established through admission of coconspirator's out-of-court statements which, taken as a whole, were corroborated by independent evidence). The challenged statements were therefore not hearsay under Rule 801(d)(2)(E), and it was not error for the district court to admit and rely on them in the forfeiture proceeding.

## VI. *Disposition.*

There was substantial evidence to support the district court's order of forfeiture regarding DeCamp's truck. There was also substantial evidence to support the district court's finding that a conspiracy existed be-

tween the declarants of the challenged statements and DeCamp. The challenged statements were therefore not hearsay. The district court properly admitted and relied on such statements in the forfeiture proceeding.

For these reasons, we vacate the decision of the court of appeals and affirm the decision of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**