**STATE of Iowa, Plaintiff–Appellee,**

v.

**$10,000 SEIZED FROM MARY PATRICK, Mary Patrick, Claimant–Appellant.**

**No. 95–1150.**

Court of Appeals of Iowa.

Jan. 29, 1997.

Robert W. Conrad, Knoxville, for Claimant–Appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Jamie Bowers, Assistant County Attorney, for Plaintiff–Appellee.

Heard by STREIT, P.J., and VOGEL, J., and SCHLEGEL, S.J.* SACKETT, J., takes no part.

STREIT, Judge.

Mary Patrick appeals from a district court judgment ruling $10,000 seized by police from Patrick was forfeitable property. Patrick contends there was no evidence linking the money with any criminal activity to support the forfeiture.

Narcotics police received a tip that there was a "suspicious" female at the Des Moines airport who should be investigated. The female, Mary Patrick, had booked a one-way ticket to San Diego, California. The officers asked Patrick's airline for her itinerary and discovered Patrick had checked one suitcase. A police drug dog was brought to the baggage area and from five suitcases set on the floor, the dog twice signaled Patrick's suitcase contained narcotics. The police stopped Patrick before she boarded her plane and asked if she had any "illegal narcotics, weapons or currency" in her suitcase. Patrick said no. The officers told her that a drug dog had indicated there were narcotics in her suitcase and asked permission to search the suitcase. Patrick consented to a police

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

search of her suitcase and boarded the plane to California.[1]

The police searched Patrick's suitcase. They found clothing, an empty Tupperware container, empty plastic sandwich bags, duct tape, a bank bag containing $10,000 in the form of 500 twenty dollar bills, and a very small quantity of methamphetamine.[2] The money and suitcase were seized by the police.

Patrick received a notice of forfeiture. She filed an application for the return of the $10,000. Following a hearing, the district court concluded the money was forfeitable property because it was "intended to facilitate the commission of a criminal offense to wit, the sale of illegal drugs." The court also stated the money was acquired from the proceeds of illegal drug sales.

Patrick appeals. She contends the district court used impermissible conjecture and speculation to link the $10,000 in her possession as proceeds from a drug transaction or money to be used to facilitate a drug transaction.

■ Review of forfeiture proceedings is for correction of errors at law. *In re Property Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996) (citing *In re Property Seized from DeCamp*, 511 N.W.2d 616, 619 (Iowa 1994)). The evidence is examined in the light most favorable to the district court judgment and the findings are construed liberally to support the district court's decision. *Id.* Those findings are binding on the court if supported by substantial evidence. *Chiodo*, 555 N.W.2d at 414 (citing *In re Property Seized from Rush*, 448 N.W.2d 472, 477 (Iowa 1989)). "An order of forfeiture will not be reversed unless the evidence is utterly wanting to support the conclusion of the trial court." *Chiodo*, 555 N.W.2d at 414 (quoting *State v. 1984 Monte Carlo SS*, 521 N.W.2d 723, 724 (Iowa 1994)). The conclusions of the trial court must be supported by substantial evidence. Substantial evidence does not,

however, denote some elevated quantity of proof. *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994). Rather, the relevant question in our review of the case is whether, after viewing all the evidence in the light most favorable to the appellee, any rational trier of fact could have found the essential elements. *Id.*

■ Mary Patrick argues the evidence supporting the State's burden of proof was all circumstantial. Specifically, she claims the State failed to prove any connection of criminal activity to her and the money since: (1) she has no criminal record; (2) there were no drugs in the case except for "invisible" methamphetamine of which there was insufficient amounts for an independent test; (3) she produced receipts for where the money came from and explained why she had it; and (4) she gave explanations for the other contents of her bag.

Forfeiture of property under Iowa Code chapter 809 [3] requires a "substantial connection" between the seized property and the underlying criminal offense. *In re Property of Doolin*, 560 N.W.2d 31 (Iowa 1996) (citing *DeCamp*, 511 N.W.2d at 620); Iowa Code § 809.1(2) (1995). The police seized the $10,000 from Mary Patrick because the money was intended to be used to buy illegal drugs in California and then return to sell the drugs in Iowa. The money was also acquired from the proceeds of illegal drug sales. The trial court concluded that the fact the methamphetamine was found in the suitcase, although a very small quantity, indicates her suitcase and money were the tools of the drug trade and had previously been used to haul drugs.

Evidence is substantial if the findings may be reasonably inferred from the evidence. *DeCamp*, 511 N.W.2d at 619. Expert testimony from narcotics police officers stated duct tape, plastic sandwich bags, and Tupperware containers were commonly used by

---

1. Patrick said she could not find the key to the lock on the suitcase.

2. The methamphetamine consisted of minute particles or brown powder at the bottom of Patrick's suitcase.

3. Sections 809.6 through 809.14, Code 1995, have been repealed. The legislature enacted the Iowa Forfeiture Reform Act, Iowa Code ch. 809A, to amend the forfeiture provisions of Iowa Code ch. 809, which went into effect on July 1, 1996.

drug dealers to conceal the drugs they were carrying from drug-sniffing dogs. They stated drug deals are usually made with $20 bills. Couriers buy one-way airline tickets when they go to purchase the drugs, then they return on a bus with the drugs because there is less security at bus depots than at airports. The Tupperware container would hold two pounds of methamphetamine, approximately the same amount Mary Patrick could buy in California for $10,000 according to testimony by a special agent of the Division of Narcotics Enforcement (DNE).

Patrick contends that her lack of any criminal record rebuts any suspicious inferences from these circumstances. Her name, however, arose in two other drug investigations, one investigation which involved the individual she visited in San Diego. The other investigation, Mary Patrick's phone number appeared on the phone records of an individual convicted for possession of methamphetamine.

Mary Patrick did not have reasonable explanations for carrying the things in her suitcase, such as a Tupperware container and duct tape, including only one pair of underwear for a trip to California that she claims was uncertain in length. She claimed the Tupperware container was for her shampoo so it would not spill while in flight, but the shampoo was not in the container when police searched her suitcase and the bottle was too large to fit in the Tupperware container. Similarly, Mary Patrick's reasoning for carrying duct tape was to tape her toiletries so they would not spill, but none were taped in her suitcase.

Patrick never adequately explained why she checked in a suitcase containing $10,000 cash wrapped in two plain paper bundles in a bank money bag. She said she wrapped the money that way to protect it from being stolen by "the airport people." We find it unlikely if Patrick's only concern was for the safety of the money she would decide to check in the suitcase containing $10,000 versus keeping the money with her on the plane in a carry-on bag. Mary Patrick has not worked for years and her only means of support is her boyfriend. It is difficult to

accept Patrick's tale that most of the money came from cash advances on credit cards and winnings at the casino. Ten thousand dollars in cash in a suitcase is sufficiently suspicious when there is methamphetamine also present for the trial court to reasonably conclude this money was being used in a drug deal.

There was enough methamphetamine in Mary Patrick's suitcase to be sniffed out by a drug dog, to be seen by police in the bottom of the suitcase looking like sand, and to test positive in the field test. It was not "invisible" as Patrick contends. Patrick was not charged with a criminal offense, such as possession of drugs. Knowledge of methamphetamine in the suitcase by Mary Patrick is not required to seize the $10,000—only a nexus between the money seized and criminal activity is required. *See* Iowa Code § 809.1(2) (1995). The presence of the methamphetamine in the suitcase provides a connection along with the other items in the suitcase and Mary Patrick's actions (buying a one-way ticket to California) support a finding the money seized was to be used to buy and sell drugs.

Mary Patrick did produce receipts for the $10,000, showing the last source of the money as being banks and a casino. Patrick showed $2000 were winnings from Mesquaki Bingo and Casino; $3000 was from cash advances from VISA cards; $2500 was from a loan from her boyfriend; and $2500 was her own money. This Court cannot find these receipts legitimatized the source of the funds. A special agent from the DNE testified cash advances on credit cards are common among traffickers who repay the money with the proceeds from drug sales. This Court is also not persuaded by Patrick's receipt of winnings from Mesquaki. Such receipt does not tell the source or amount of the cash used to bet.

In light of the evidence presented at trial, we find the district court did not err in ordering a forfeiture of Mary Patrick's $10,000. The burden is on the State to prove a substantial connection between the money and the illegal activity. All the circumstances of this case, combined with Patrick's feeble explanation of her actions and the source of the money, supports reasonably deducible inferences the defendant was going

to use the $10,000 seized by the police to buy illegal drugs in California and return to Iowa to sell them.

**AFFIRMED.**

VOGEL, J. concurs.

SCHLEGEL, S.J., dissents.

SCHLEGEL, Senior Judge (dissenting).

I respectfully dissent.

Although an order of forfeiture will not be reversed unless the evidence is utterly wanting to support the conclusion of the trial court, the evidence must be substantial. *In re Property of Rush*, 448 N.W.2d 472, 477 (Iowa 1989); *In re Property of H.E.W., Inc.*, 530 N.W.2d 460, 463 (Iowa App.1995).

"A finding is supported by substantial evidence if it may be reasonably inferred from the evidence." Substantial evidence is evidence that a reasonable mind could accept as adequate to reach a conclusion. A finding may be supported by substantial evidence although two inconsistent conclusions might be inferred from the same evidence. Substantial evidence is more than a scintilla of evidence, but it need not be a preponderance of the evidence.

*In re Property of McIntyre*, 550 N.W.2d 457, 460 (Iowa 1996) (citations omitted).

"Forfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 864, 83 L.Ed. 1249, 1254 (1939); *H.E.W.*, 530 N.W.2d at 464.

Former Iowa Code section 809.1(2) stated "forfeitable property" includes:

b. Property which has been used or is intended to be used to facilitate the commission of a criminal offense or to avoid detection or apprehension of a person committing a criminal offense.

c. Property which is acquired as or from the proceeds of a criminal offense.

"Facilitate" in this section requires "a substantial connection between the property and the crime." *In re Property Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996)

(citing *In re Property Seized from Kaster*, 454 N.W.2d 876, 879 (Iowa 1990)). Whether there is such nexus between the seized property and the criminal offense is a question of fact. *Id.*

The evidence connecting Patrick's $10,000 to drug dealing was circumstantial.

While circumstantial evidence is as probative as direct evidence in proving a matter in issue, circumstances must have sufficient probative force to constitute a basis for a legal inference. Circumstantial evidence does not have such probative force when the inference drawn from it is "based on surmise, speculation, or conjecture."

*H.E.W.*, 530 N.W.2d at 463–64 (citing *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984)). The State offered "expert" testimony from Officer DeJoode who opined the couriers buy one-way airline tickets in California and return promptly by bus after they make their buy. The drug deals are usually made with $20 bills. The couriers use Tupperware containers to carry the drugs either on their person or inside their luggage. The couriers use duct tape to secure the drugs to their body or package the individual sandwich bags used to put the drugs in. The officer stated drug dealers have the mistaken belief drug-sniffing dogs cannot smell the drugs if wrapped in duct tape.

The record reveals that Patrick has no criminal record whatsoever. There were no drugs in the suitcase belonging to Patrick except for traces of "invisible" methamphetamine of which there was such a minute amount an independent test could not be made. No drugs or drug paraphernalia were found in her home in rural Eddyville when peace officers executed a search warrant. While there was a role of duct tape in Patrick's suitcase, evidence failed to establish it was used to wrap drugs or money. Likewise, the plastic sandwich bags were empty and no evidence was submitted to show they had been used to hold drugs.

Patrick testified the Tupperware was used to transport her shampoo to prevent it from spilling. She explained the sandwich bags were to be used to hold wet soap and toiletries. She also testified she had brought the

roll of duct tape to tape various toiletries shut. Patrick added she brought the $10,000 in case she found a business opportunity to invest in while in California. Patrick produced legitimate receipts for the money, which showed that $2000 were winnings from Mesquaki Bingo and Casino; $3000 came from cash advances from two of Patrick's VISA cards; $2500 was a loan from Mr. Reed, Patrick's boyfriend; and $2500 was her own money. No evidence was submitted linking the $10,000 seized to proceeds from illegal drug transactions.

While I am not convinced Patrick's testimony was credible, the district court's findings rested on the weak evidence connecting the $10,000 to drug dealing and Patrick's lack of credibility. The district court's determination that the claimant's testimony was not credible does not render the evidence on the drug connection substantial. *See In re Property of Daniels*, 478 N.W.2d 622, 623 (Iowa 1991).

The trial court makes much of the fact that Patrick only packed one change of underwear for a two-week vacation and that her shampoo had to be forced into the Tupperware container to make it fit. The trial court noted the presence of the empty sandwich bags, the roll of duct tape, and the small amount of methamphetamine vacuumed from Patrick's suitcase. The court also observed that Patrick and the friends she was going to visit were the subject of a drug investigation and the home she was staying in was that of persons incarcerated for selling drugs.

I am well aware that the possibility of drawing inconsistent conclusions from the same body of evidence does not prevent a finding from being unsupported by substantial evidence. *Rush*, 448 N.W.2d at 477. While I would not find that Patrick's testimony was credible, I would find the State's evidence linking the $10,000 to drug dealing was insubstantial despite the credibility determinations made by the trial court. *See Chiodo*, 555 N.W.2d at 415 n. 3. The minute amount of methamphetamine vacuumed from the suitcase, the Tupperware container, duct tape, sandwich bags, and Officer DeJoode's speculative testimony does not provide substantial evidence connecting the money with drug dealing, thereby allowing forfeiture of the money. The evidence presented by the State was weak and required impermissible conjecture or speculation to tie the cash seized with illegal drug transactions. *See Daniels*, 478 N.W.2d at 623.

Consequently, I believe there was insufficient evidence to support the district court's finding that the money seized was forfeitable. I would reverse the district court's forfeiture and remand the case.