**IN THE COURT OF APPEALS OF IOWA**

No. 23-1248
Filed October 30, 2024

**IN THE MATTER OF PROPERTY SEIZED FOR FORFEITURE FROM DARRELL ANTHONY JONES,**

**DARRELL ANTHONY JONES,**
Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Greg Milani, Judge.

Appellant appeals the district court's combined forfeiture order forfeiting $85,000 in U.S. currency to the State. **AFFIRMED.**

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Heard by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

During two separate searches of Darrell Jones's residence, police officers seized over $85,000 in U.S. currency. This figure included a mix of cash found on Jones's person and in the residence, as well as funds in a bank account belonging to Jones. Items typically associated with drug dealing and substantial quantities of marijuana were also seized by the police during the searches of Jones's residence.

The State filed two in rem forfeiture complaints against Jones, seeking to have the U.S. currency seized during the searches forfeited to the State. In both complaints, the State alleged the U.S. currency were "proceeds" of "conduct giving rise to forfeiture," as defined by Iowa Code section 809A.4(3) (2020). The district court held a combined forfeiture hearing for the two forfeiture actions. The district court found that the currency seized "were used in the commission of or proceeds from the crimes committed and pled guilty to by [Jones]." Thus, the currency was forfeited to the State.

Jones appeals, arguing that (1) there was not substantial evidence that *all* the currency forfeited were the proceeds of marijuana distribution; (2) the forfeitures amount violates the excessive fines clause of the state and federal constitutions; and (3) the district court lacked subject matter jurisdiction over one of the forfeiture actions.

After our review of the record, we affirm.

## I. Background Facts and Proceedings

On January 14, 2020, Jones was pulled over for a traffic stop two separate times by deputies with the Wapello County Sheriff's Office. During the first stop,

Deputy Aaron McConnell smelled the odor of marijuana emanating from Jones's vehicle. When questioned about the smell, Jones told Deputy McConnell that his brother had recently smoked a marijuana blunt in the vehicle. A few hours later, Jones was pulled over by Chief Deputy Marty Wonderlin. During his interaction with Deputy Wonderlin, Jones stated he had previously served four years in prison for cocaine distribution. Following the stops, the deputies applied for a search warrant for Jones's residence in Ottumwa.

After the search warrant was granted, officers waited to execute the warrant until the January 23 due to staffing and officer safety concerns. On January 18, Jones contacted the Wapello County Sheriff's Office to request a salvage vehicle inspection. Among other odd-jobs, Jones runs a side business of buying and flipping salvaged vehicles. Sheriff's Deputy Todd Evans met with Jones at an agreed-upon location on January 23 to conduct a salvage vehicle inspection. Once the vehicle inspection was completed, Jones was arrested pursuant to an outstanding warrant for a driving-while-barred charge. While conducting a search incident to arrest, $2470 in cash was found on Jones's person. This dollar amount was comprised mostly of smaller denominations—five, ten, and twenty-dollar bills. Two cellphones were also found on Jones's person.

Following Jones's arrest, deputies with the sheriff's office transported him to his residence and executed the search warrant. While the search was being conducted, Jones made numerous incriminating statements to officers.[1] He told

---

[1] The record is conflicting on when this search in January 2020 occurred. In its in rem forfeiture complaint, the State represented that the property discovered during the January 2020 search was seized on January 18 and 24. The district court in its ruling listed the search date as January 18. However, reports from officers with

officers they would find marijuana in the residence. Jones also admitted to selling "high quality" marijuana. He explained to the officers that he obtained marijuana from a wholesale supplier in quarter pound quantities. Additionally, Jones indicated to officers that they would find incriminating information related to marijuana distribution on his cell phones if they were searched. Lastly, Jones told the officers he had not been employed for nearly a year at the time of the search, and that he had not received any unemployment compensation during the previous six months.

During this search of Jones's residence, officers found $6880 cash inside a coat hanging in a bedroom closet, counterfeit currency, forty-two grams of marijuana, 100 small plastic baggies, eight cell phones, three digital scales, and a receipt to a bank account at Community 1st Credit Union in Ottumwa. The receipt for the bank account showed an account balance of $39,952. The officers seized each of these items and subsequently seized $31,535 from Jones's bank account.

Through subpoenaing Community 1st Credit Union, officers learned that Jones opened the account in March 2019. Information officers obtained from the credit union showed Jones frequently made large deposits of cash into the account, which were usually comprised of large sums of smaller denomination bills. For instance, on August 30, 2019, Jones deposited $6540 in cash. Of this number, $1800 was in one-hundred-dollar bills, $1050 was in fifty-dollar bills, $3640 was in twenty-dollar-bills, and $50 was in ten-dollar bills. The district court

---

the sheriff's office—which were admitted into evidence—stated the search occurred on January 23. Testimony from Sherriff's Deputy Clint Neis also indicates the search occurred on January 23.

heard testimony from Sherriff's Deputy Clint Neis that such large sums of money comprised of smaller denominations were consistent with drug dealing. As Deputy Neis explained, "the majority of drug deals are done with smaller denomination bills, such as 20s, 10s, and the majority of the deposits into that account were large sums of cash in smaller denominations."

Following the January 23 search, Jones pled guilty to money laundering, possession of a controlled substance with intent to deliver, failure to affix a drug tax stamp, and perjury. The perjury charge stemmed from Jones's failure to disclose the existence of the Community 1st Credit Union account to the district court in his application for court-appointed counsel. The basis for the money laundering charge was allegations that Jones used his business of buying and selling salvage vehicles as a front to launder the profits of his drug trafficking.

Jones again came to the attention of the Wapello County Sheriff's Office on November 20, 2020. That evening, the Ottumwa Police Department responded to reports of a domestic fight occurring at Jones's residence. Allegedly, Jones and a female companion were involved in physical altercation over money. Upon arriving at the residence, officers noticed a strong odor of marijuana. Ottumwa police officers quickly contacted deputies at the sheriff's office. A deputy with the sheriff's office then applied for and was granted a search warrant for Jones's residence.

During this search of Jones's residence, officers found $2500 in cash on a living room chair, $350 in cash next to an electric heater in the living room, $7460 in cash in an envelope next to the same electric heater, $284 in a bread storage container located in the living room, and $41,020 in cash in a silver bag found in a car located on the property. In total, the officers seized $51,614 in cash from the

residence. Officers also found a backpack filled with marijuana in a shed in the backyard. The backpack contained three separate bags of marijuana that, when added together, amounted to over 600 grams. Officers also found multiple digital scales in the residence, three cellphones, packaging materials and numerous baggies, a nine-millimeter handgun, a .22-caliber rifle, and a significant amount of ammunition for the rifle.

On April 21, 2020, the State filed an in rem forfeiture complaint requesting that the $36,365[2] in U.S. currency seized during the January 23 search be forfeited to the State. Jones filed a handwritten answer to this complaint, which asserted "[t]he property seized was not or has nothing to do with illegal activity." Jones also asserted he had supporting evidence and asked for further proceedings. On December 10, 2020, the State filed an in rem forfeiture complaint for the property seized during the November 20 search. In this complaint, the State requested that the $51,614 in U.S. currency seized be forfeited to the State. Jones filed an answer asserting that he and Siearre Smith were "claimants" of the property seized on November 20.

A combined forfeiture hearing was held in the district court on February 2, 2023. Jones appeared as a self-represented litigant. Jones testified he earned the $36,365 by buying and selling salvaged vehicles. As Jones explained, "I was in the business of buying and selling cars, so that money was part of what I was doing, like, selling my cars and stuff." Jones offered several exhibits into evidence,

---

[2] In its initial complaint, the State requested that $41,405 in U.S. currency be forfeited to the State. However, this complaint was later amended to request that only $36,365 of the U.S. currency seized be forfeited.

including bank statements and transaction summaries for his Community 1st Credit Union account, a list of vehicles he purchased, and a bank statement for an account he had with US Bank. Jones also offered several tax documents showing income he earned in 2017 and 2018. He offered documentation showing unemployment compensation he received in 2019 as well.

As for the $51,614, Jones similarly maintained he earned this money from buying and flipping vehicles. As Jones testified, "[b]ut by that time, I had learned how to go buy and sell cars. So when I was out of work, that's what I started investing my money into and what I started doing with my money was buying cars, selling cars, and things like that nature." According to him, it was "crazy" to "think that this type of money had been made off marijuana." Jones also explained that the $41,020 in cash found in a vehicle located on the property was money he and Smith intended to use to purchase a home together. Jones asserted some of the currency seized on November 20 belonged to Smith, but she did not participate in the proceedings after filing an initial answer.

The district court subsequently entered a combined forfeiture order. The district court found that the $36,635 in U.S. currency seized during and after the January 23 search "were the proceeds from the illegal activities to which [Jones] was participating in and charged with and subsequently [pleaded] guilty to." Thus, the district court deemed this money was forfeited to the State. Likewise, the district court found the $51,714 in U.S. currency seized during the November 20 search were the proceeds of Jones's illegal activities. This money was also forfeited to the State.

Jones appeals the district court's ruling, arguing that (1) there was not substantial evidence that *all* of Jones's cash and bank accounts were proceeds of selling marijuana; (2) the forfeiture of over $85,000 violates the excessive fine clauses of the state and federal constitutions; and (3) the district court lacked subject matter jurisdiction over the forfeiture action stemming from the January 23 search.

## II. Standard of Review

Our review of "forfeiture proceedings is for correction of errors at law." *In re Young*, 780 N.W.2d 726, 727 (Iowa 2010). "We examine the evidence in the light most favorable to the district court judgment and construe the district court's findings liberally to support its decision." *In re Prop. Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996). The district court's findings are binding upon us if they are supported by substantial evidence. *In re Prop. Seized from DeCamp*, 511 N.W.2d 616, 619 (Iowa 1994). Evidence is said to be "substantial if a reasonable mind would accept it as adequate" to reach a similar conclusion. *Id.*

To the extent a party raises constitutional issues, our review is de novo. *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 498 (Iowa 2012).

## III. Analysis

### A. Sufficiency of the Evidence

Property subject to forfeiture includes "[a]ll proceeds of any conduct giving rise to forfeiture." Iowa Code § 809A.4(3). In turn, conduct giving rise to forfeiture is defined as "[a]n act or omission which is a public offense and which is a serious or aggravated misdemeanor or felony." *Id.* § 809A.3(1)(a). "Proceeds" are defined as "property acquired *directly* or *indirectly* from, produced through, realized

through, or caused by an act or omission and includes any property of any kind without reduction for expenses incurred for acquisition, maintenance, production, or any other purpose." *Id.* § 809A.1(7) (emphasis added).

For clarity, we divide our analysis according to the currency seized in the separate searches.

### 1. Currency Forfeited from the January 2020 Search[3]

Jones contends on appeal that "just because [he] admittedly sold some marijuana does not mean the State is entitled to every dollar in [his] possession including the entirety of his bank account." Jones claims the State offered no estimate of the total proceeds realized from his marijuana distribution enterprise. He also notes his Community 1st Credit Union account was opened well before the evidence of his drug trafficking was presented. He argues it is undisputed that he earned income from his employment with "JBS/Swift Pork," received unemployment compensation for twenty-six weeks in 2019, and that he earned considerable income by buying and selling salvaged vehicles. Thus, he asserts "there can be no dispute that a significant portion, if not all, of the money in his bank account came from legitimate means." At a minimum, Jones contends the State should be required to return the $31,535 seized from his bank account. We believe Jones's arguments miss the mark for the reasons detailed below.

---

[3] Jones's argument related to the currency seized as a result of the January 2020 search seems primarily focused on the $31,535 seized from his bank account. He makes little to no mention of the cash seized during the January 2020 search. However, for the same reasons as we discuss below concerning the currency seized from his bank account, we believe the State produced substantial evidence the cash seized during the January 2020 search were the proceeds of marijuana trafficking.

We begin by noting Jones is correct that he introduced into evidence several exhibits demonstrating he earned sporadic income from 2017 to 2019. For example, he introduced into evidence a copy of a tax return transcript showing that he earned $11,855 in 2017 and $57,587 in 2018. He also introduced a document showing he received $12,142 in unemployment compensation in 2019. We also acknowledge Jones provided a list of salvage vehicles he has purchased dating back to 2018.

However, we are not convinced such evidence establishes the $31,535 seized from Jones's bank account was derived from legitimate means. We note the record establishes the Community 1st Credit Union account was opened on March 27, 2019. According to statements Jones made to officers during the January 2020 search, he was unemployed at this time. Yet a transaction summary for the account offered into evidence by Jones shows a litany of large cash deposits were made into the account over the next year—a period in which the State points out Jones was unemployed. Like the district court, we are not convinced the timing and size of these deposits can be attributed to income Jones earned in 2017 and 2018. To believe so would require us to believe Jones was a greater miser than Ebenezer Scrooge. *See* Charles Dickens, A Christmas Carol (1843).

And while Jones did introduce into evidence documentation confirming he purchased salvaged vehicles, this documentation did not show how much he earned from *selling* those vehicles. Jones's testimony also provided no information relative to how much income he earned from buying and selling salvaged vehicles. Jones pled guilty to money laundering following the January 2020 search. The

factual basis for the plea was that Jones used his salvage vehicle business to launder the profits from his marijuana trafficking.  This cast doubt on Jones's claim the funds in his bank account came from buying and selling salvage vehicles.

More importantly, the State presented substantial evidence connecting the funds in the bank account to marijuana trafficking.  The record reflects that the large deposits made into the bank account were frequently comprised of smaller denomination bills.  Deputy Neis testified at the forfeiture hearing such deposits were consistent with drug dealing because drug deals frequently involve cash in smaller denominations.  Deputy Nies also indicated in his testimony there was a substantial variance in the amounts of cash being deposited into the account, and that such variances were not consistent with income earned from a legitimate job.  And "[t]he expertise of police officers in drug investigations may be considered when determining if the State presented sufficient evidence."  *In re Prop. Seized from Thao*, No. 14-1936, 2016 WL 1130280, at *8 (Iowa Ct. App. March 23, 2016).

Furthermore, the State presented evidence Jones admitted to selling "high quality" marijuana to officers during the January 2020 search.  He also told officers they would find incriminating information related to marijuana distribution on the various cellphones seized from his residence.  Notably, he pled guilty to possession of a controlled substance (marijuana) with intent to deliver following the January 2020 search.  Jones asserts there is no evidence he was distributing marijuana prior to January 2020, but given these facts a fact-finder could reasonably infer that he was engaged in marijuana trafficking prior to his residence being searched.

Based off this evidence, we believe substantial evidence supports the district court's finding the $36,635 in currency seized during the January 2020 search were the proceeds of marijuana trafficking. We note "[e]vidence is not "insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004).[4]

2. *Currency Seized from November 2020 Search*

As for the $51,614 in currency seized from Jones's residence during the November 2020 search, Jones argues a portion of this money was owned jointly with Smith. And he claims "[t]here was no evidence that Smith had any involvement in drug trafficking or any other type of illegal activity." We reject this argument.

---

[4] In his brief, Jones asserts that not all the money in his bank account was the proceeds of marijuana trafficking. He believes his case is analytically similar to *In re Prop. Seized from Boughton*, a case in which we held that a seized Chrysler was subject to forfeiture only to the extent criminal proceeds were used to fund its purchase. No. 13-0327, 2014 WL 70300, at *3 (Iowa Ct. App. Jan. 9, 2014). When property subject to forfeiture has been commingled with property not subject to forfeiture, the commingled property and its fruits shall be forfeited "to the extent of the property subject to forfeiture." Iowa Code § 809A.12(13). Key to the court's reasoning in *Boughton* was the fact the State presented no evidence that marijuana trafficking proceeds were used to purchase a Nissan, which was subsequently sold to purchase the Chrysler. 2014 WL 70300, at *3. Thus, the court believed the Chrysler was clearly paid for by some legitimate funds. *Id.* And the court held the Chrysler was subject to forfeiture "to the extent that proceeds of criminal conduct comprised the difference between the purchase price and the $11,200 received from [the] sale of the Nissan." *Id.* This case is distinguishable because the State provided strong evidence the funds in Jones's bank account were the proceeds of illicit drug trafficking. Jones provided scant evidence that the funds in his bank account were comprised of any legitimate funds.

We note the evidence shows all the currency seized during the November 20 search came from Jones's residence—where substantial amounts of marijuana and items typically associated with drug distribution were found. The record does not establish that Smith cohabited with Jones. And the Iowa Code creates a presumption that money found near drugs or drug paraphernalia are the proceeds of illicit activity. *See* Iowa Code § 809A.12(10) (stating "the fact that money . . . was found in close proximity to any contraband or an instrumentality of conduct giving rise to forfeiture" creates a presumption "that the money" was the proceeds of conduct giving rise to forfeiture).

This large amount of currency was found in Jones's residence at a time when he was unemployed. Jones admitted to selling marijuana to officers and pled guilty to possession of a controlled substance (marijuana) with intent to deliver. Multiple cell phones were seized during the search. Deputy Neis testified drug dealers often own multiple cell phones to conduct their trafficking business.

And while Jones claims he jointly owned some of the currency seized on November 20 with Smith, she did not participate in the proceedings after filing an initial answer. Jones's testimony was the only evidence presented at the hearing regarding Smith's alleged co-ownership of the currency. But the district court explicitly noted it did not find Jones's testimony credible. *See Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (noting appellate courts should defer to witness credibility determinations made by the district court, especially when such determinations are outcome determinative). Thus, we find substantial evidence supported the district court's finding the $51,614 in currency was the proceeds of Jones's marijuana trafficking.

**B. Excessive Fine Clauses**

Jones next argues that the forfeiture of over $85,000 in currency violates the Excessive Fines Clauses of the state and federal constitutions. He claims the gravity of the offenses he was convicted of following the searches of his residences were not severe. He believes the forfeiture of his currency is grossly disproportionate to the severity of his criminal activity. We decline to address the merits on this argument because error on this issue was not preserved.[5]

Jones contends error was preserved because the district court stated, "that the property forfeited is not grossly disproportionate to the severity of the case(s)." In Jones's view, this means the district court determined the forfeitures of the currency did not violate the Excessive Fine Clauses of the state and federal constitutions. We disagree.

Jones's argument overlooks the fact that, earlier in its ruling, the district court cited Iowa Code section 809A.12B. This statute states, "[p]roperty shall not be forfeited as an instrumentality under this chapter to the extent that the amount or value of the property is grossly disproportionate to the severity of the offense." Iowa Code § 809A.12B(1). Thus, when the district court stated "the property forfeited is not grossly disproportionate to the severity of the case(s)" the court

---

[5] Although the State conceded during oral argument that error was preserved on this issue, we have a duty to independently assess error preservation. *See Top of Iowa Coop v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). We have this duty because we are "a court for correction of errors at law." *See* Iowa Code § 602.5103(1). "If an issue was never presented to the district court to rule on, and if the district court did not in fact rule on it, we lack any 'error' to correct." *State v. Gomez Medina*, 7 N.W.3d 350, 355 (Iowa 2024).

determined the forfeitures did not violate section 809.12B(1). Nowhere in the district court's ruling is the Excessive Fines Clause of either the state or federal constitution mentioned. And there would have been no reason for them to have been because Jones never raised this issue.

Because the issue of whether the forfeitures violated the excessive fine clauses of the state and federal constitutions was not raised, error was not preserved. *See In re Det. of Anderson*, 895 N.W.2d 131, 138 (Iowa 2017) ("In order for error to be preserved, the issue must be both raised and decided by the district court.").

### C. Subject Matter Jurisdiction

Jones's final argument is that the district court lacked subject matter jurisdiction to hear the forfeiture action stemming from the January 2020 search. Jones argues that because some of the items seized from his home occurred on January 18 (not including the funds in his bank account which were seized on January 24), the State was required to "[f]ile a notice of pending forfeiture against the property within ninety days after seizure." Iowa Code § 809A.8(1)(a)(1). Thus, Jones contends the State was required to file notice of pending forfeiture for all items by April 18, 2020. And because notice of pending forfeiture was not filed by the State until April 21, 2020, subject matter jurisdiction is lacking as the notice was untimely.

Again, we decline to address the merits on this argument because Jones waived the argument by not raising it in the district court. Jones conflates subject matter jurisdiction and a court's *authority* to hear a case. "Subject matter jurisdiction refers to the power of a court 'to hear and determine cases of the

general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.'" *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) (citation omitted).

A court may have subject matter jurisdiction yet lack *authority* to hear a case. "In such a situation we say the court lacks authority to hear that particular case." *See id.* (citation omitted). This distinction is crucial because challenges to subject matter jurisdiction may be brought at any time while challenges to a court's authority may be waived. *See id.* at 483.

The Iowa Code clearly confers subject matter jurisdiction over forfeiture actions to the district courts. *See* Iowa Code § 809A.2(1)(a). And our supreme court has characterized notice challenges under section 809A.8(1)(a)(1) as challenges to a district court's authority. *See In re Prop. Seized for Forfeiture from Williams*, 676 N.W.2d 607, 613 (Iowa 2004) (finding "the district court did not have *authority* to hear the second forfeiture action" because the notice requirements of section 809A.8(1)(a)(1) were not met (emphasis added)). Therefore, we find Jones's subject matter jurisdiction challenge is really a challenge to the district court's authority.

Because Jones never raised a challenge to the district court's authority, we find this challenge has been waived. *See State v. Emery*, 636 N.W.2d 116, 123 (Iowa 2001) ("Any deficiency in the district court's authority was waived when the defendant failed to object to the district court's adjudication of his case.").

## IV. Conclusion

In sum, we affirm the district court's ruling, finding (1) substantial evidence supported the district court's finding the currency seized during the two searches

of Jones's residence were the proceeds of illicit drug trafficking; (2) Jones did not preserve error on his arguments that the forfeitures violated the excessive fine clauses of the state and federal constitutions; and (3) his challenge to the district court's authority was waived.

**AFFIRMED.**