In the Matter of PROPERTY SEIZED
FROM Thomas CHIODO;

Thomas Chiodo, Appellant.

No. 95–851.

Supreme Court of Iowa.

Oct. 23, 1996.

Alfredo Parrish, Maggi Moss, and Paige Fiedler of Parrish, Kruidenier, Moss, Dunn, Montgomery & Thomas, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, John P. Sarcone, County Attorney, and Gregory Brandt, Assistant County Attorney, for appellee State of Iowa.

McGIVERIN, Chief Justice.

The issue before us is whether an automobile belonging to claimant Thomas Chiodo was properly forfeited under Iowa Code chapter 809 (1995). The district court denied Chiodo's application for the return of the automobile and entered an order forfeiting the automobile to the State. We affirm.

I. *Background facts and proceedings.* On March 8, 1995, drug enforcement officers of the Des Moines police department executed a search warrant at the residence of claimant Chiodo. An officer advised Chiodo and his friend, Angela Boord, of their *Miranda* rights, and the two submitted to questioning in separate areas of the residence.

Boord, a twenty-year-old high school graduate, had been awakened at about 9:30 a.m. by the officers' entry into the residence. In response to questioning by the officers, Boord gave information about Chiodo's involvement with narcotics. Boord also prepared a signed, handwritten statement on the same subject. That statement set forth a number of assertions, including that: 1) Boord then had broken off her relationship with Chiodo because of the time he devoted to selling drugs; 2) Boord had witnessed visits to Chiodo's residence by an average of three or four persons each night for the purpose of buying marijuana at a price of twenty to twenty-five dollars for one-eighth of an ounce; 3) Boord had been present on two different occasions when Chiodo took marijuana to another address; 4) Boord knew that Chiodo used his white 1994 Pontiac Grand Prix auto to deliver marijuana to other persons; 5) Boord knew that Chiodo used his white 1994 Pontiac Grand Prix auto to replenish his marijuana supply; and 6)

Boord knew that Chiodo sold drugs to supplement the money he earned by working fifteen hours per week at a legitimate job.

Chiodo told officers that he sold narcotics, but only to friends or acquaintances. He said that he obtained the drugs from his brother, usually an ounce at a time, and broke it down into eighths to sell. Chiodo's brother lives about a mile to a mile and one-half away from Chiodo's house.

Pursuant to the search warrant, officers searched Chiodo's house, car, and person. They found marijuana, several types of scales, plastic bags, and other drug paraphernalia in Chiodo's house. Chiodo's white 1994 Pontiac auto contained two half-smoked marijuana cigarettes. Police discovered two baggies of marijuana in the front pocket of the pants Chiodo was wearing.

Police arrested Chiodo and charged him with possession of a controlled substance in violation of Iowa Code section 124.401(3), a serious misdemeanor. *See* Iowa Code § 124.401(3). On the same day, the State filed a notice of forfeiture under Iowa Code chapter 809 and seized Chiodo's 1994 Pontiac. *See* Iowa Code § 809.1(2)(b).

Chiodo filed an application in district court seeking the return of the 1994 Pontiac Grand Prix. *See id.* § 809.9. At the hearing on the application, the State presented the officers' testimony as to the oral statements made to them by Chiodo and Boord on March 8 and offered Boord's written statement into evidence.

In response, Chiodo claimed, first, that there was insufficient evidence to show the automobile was used to facilitate the commission of a criminal offense. Chiodo sought to discredit both the oral information and the signed, handwritten statement provided by Boord during the March 8, 1995, search of Chiodo's residence. Boord testified that although she had written and signed the statement, the contents were mostly false. She claimed that the officers twisted her words as she responded to their questions and that she felt threatened by the officers as she prepared the statement. Nevertheless, the written statement was admitted into evidence

without objection. Second, Chiodo contended that forfeiture of the automobile violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. *See* U.S.Const. amend. VIII.

The district court denied Chiodo's application for the return of seized property and ordered the 1994 Pontiac forfeited to the State. After making extensive findings of fact regarding the credibility of Boord's written statement and her later testimony in court, the district court determined that the written statement prepared at the time of the search and the officers' testimony as to what Boord and Chiodo told them were more reliable than Boord's trial testimony. The court concluded that Boord's written statement, in conjunction with Chiodo's statements, the drugs and paraphernalia found during the search, and the officers' testimony, provided sufficient evidence that the 1994 Pontiac Grand Prix was used to facilitate Chiodo's drug dealing operation.

The district court further concluded that forfeiture of Chiodo's automobile did not violate the Excessive Fines Clause. Finding that Chiodo's drug dealing was extensive enough to generate much of the income needed to make his rent and automobile payments, the court reasoned that forfeiture of the automobile was not disproportionate to the offense committed.

Chiodo appealed from the district court's order forfeiting the automobile. *See* Iowa R.App. P. 1.

■ II. *Standard of review.* We review forfeiture proceedings under Iowa Code chapter 809 for correction of errors at law. *In re Property Seized from DeCamp,* 511 N.W.2d 616, 619 (Iowa 1994). We examine the evidence in the light most favorable to the district court judgment and construe the district court's findings liberally to support

its decision. *Id.* Those findings are binding on us if supported by substantial evidence. *In re Property Seized from Rush,* 448 N.W.2d 472, 477 (Iowa 1989). "An order of forfeiture will not be reversed unless the evidence is utterly wanting to support the conclusion of the trial court." *State v. 1984 Monte Carlo SS,* 521 N.W.2d 723, 724 (Iowa 1994).

■ This case also raises constitutional issues. We review such issues *de novo. State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994).

III. *Forfeiture of Chiodo's automobile.* On appeal, Chiodo argues: 1) the district court erred in finding there was sufficient evidence that his 1994 Pontiac auto was used to facilitate the commission of a criminal offense; and 2) forfeiture of the automobile constitutes an excessive fine in violation of the Eighth Amendment of the United States Constitution. We examine each argument in turn.

■ A. *Chiodo's automobile as "forfeitable property".* Under Iowa Code section 809.1(2), "forfeitable property" includes:

b. Property which has been used or is intended to be used to facilitate the commission of a criminal offense or to avoid detection or apprehension of a person committing a criminal offense.

We have said that the word "facilitate" in that subsection requires "a substantial connection between the property and the crime." *In re Property Seized from Kaster,* 454 N.W.2d 876, 879 (Iowa 1990). Whether there is such nexus between the seized property and the criminal offense is a factual issue to be determined by the fact finder. *Id.* In *Kaster,* we noted that the term "criminal offense" as used in section 809.1(2)(b) includes misdemeanors. *Id.* at 878.[1]

---

1. The legislature recently enacted the Iowa Forfeiture Reform Act, Iowa Code ch. 809A, to amend the forfeiture provisions of Iowa Code ch. 809. 3 Iowa Legis. Serv. 121 (West 1996). Under new chapter 809A, which went into effect on July 1, 1996, conduct giving rise to forfeiture includes "[a]n act or omission which is a public offense and which is a *serious or aggravated misdemeanor or felony.*" Iowa Code § 809A.3(1) (emphasis added). Thus, after July 1, 1996, conduct punishable as a simple misdemeanor does not trigger the forfeiture provisions of Iowa Code ch. 809A. Under § 809A.4(2)(b), in cases where the only conduct giving rise to forfeiture is drug possession under § 124.401(3), real property is not subject to forfeiture, and personal property may be forfeited only pursuant to an in personam civil action under § 809A.14. §§ 809A.4(2)(b), .14.

In *State v. Dykes,* 471 N.W.2d 846 (Iowa 1991), we upheld the forfeiture of an automobile based on possession of a controlled substance found in the vehicle. We noted that the presence in the automobile of another material, a "cutting agent" commonly used in drug dealing, might provide sufficient evidence to base the forfeiture on possession with intent to deliver under Iowa Code section 204.401(1) (now section 124.401(1)). *Dykes,* 471 N.W.2d at 848. However, we concluded that it was unnecessary to examine that basis for forfeiture since *Kaster* made it clear that possession alone would render the vehicle forfeitable. *Id.*

█ In this case, there is undisputed evidence that Chiodo was in possession of marijuana cigarettes found in his 1994 Pontiac Grand Prix. As in *Dykes,* possession of a controlled substance found in the vehicle provides a sufficient ground for forfeiture.[2]

█ Here, however, the record yields evidence of more than mere possession. The district court found that there was a substantial connection between Chiodo's 1994 Pontiac and the crime of possession with intent to deliver. Stated otherwise, there was evidence the auto was used to facilitate Chiodo's drug dealing operation.

Chiodo contends the district court improperly relied on Boord's written statement to find that connection. Chiodo points out that Boord later disclaimed the unsworn statement at trial as the product of coercion and further argues that even if the statement is

considered dependable, it does not show any direct knowledge by Boord of the automobile's use in connection with drug dealing. Therefore, according to Chiodo, the statement is insufficient to support the district court's findings as a matter of law. We do not agree.

The district court chose to give more weight to Boord's written statement and her oral statements to the officers than to her in-court testimony. As finder of fact, the district court had the duty of assessing the credibility of the witnesses and determining the weight to be given to the various items of evidence.[3] Chiodo did not object at the hearing to the admission into evidence of Boord's written statement. Since the admissibility of the statement is not at issue, we need only consider whether there is substantial evidence supporting the district court's determination that the statement was reliable.

The district court set forth in detail its observations concerning the courtroom demeanor of Boord and the officers who had questioned her,[4] and it noted that Boord's in-court explanations for some of the assertions contained in the written statement seemed incredible. The court found it difficult to believe Boord's in-court testimony that she did not know Chiodo was dealing in drugs, since "she [had been] living with this man, knew he was smoking marijuana, [knew he] had scales and baggies around the house, [and] saw people coming to the residence nightly to buy drugs."

2. Chiodo argues that we must confine our consideration to the crime of possession with intent to deliver, since the State relied on that crime in the district court. We note that although the district court based its decision on possession with intent to deliver, it expressly concluded that "this vehicle was used, at the very least, to possess controlled substances." In any event, "[w]e may ... uphold the district court's decision on any basis existing in the record, even though different from the one relied upon by the court." *State v. Green,* 540 N.W.2d 649, 655 (Iowa 1995).

3. Chiodo cites *In re Property Seized from Daniels,* 478 N.W.2d 622 (Iowa 1991), to argue that the district court erred in using credibility determinations to reach its decision. However, in that case, we found that evidence linking the property at issue to a criminal offense was insubstantial *whether or not* certain testimony was credible.

*Daniels,* 478 N.W.2d at 623. Here, in contrast, the substantiality of the written statement depends upon an assessment of credibility of the witness, Boord, and the police officers' testimony.

4. The district court stated in its ruling that Boord's attention was focused closely on Chiodo and his attorney during her testimony, that she seemed reluctant to make eye contact with the court, and that her responses to questioning appeared to be rehearsed. In contrast, the court found that the officer who had been responsible for questioning Boord during the search of Chiodo's home exhibited a forthright demeanor during his testimony; he looked directly at the court and answered questions candidly even when his responses might be considered damaging to the State's case.

In addition, the court observed that Boord's renewed relationship with Chiodo at the time of the hearing raised suspicions about the veracity of her testimony. We add our observation that Boord was twenty years old and a high school graduate when she prepared the statement; it may be inferred that she would be less susceptible to suggestion from officers than someone with less experience and education. Thus, we conclude there is substantial evidence supporting the district court's finding that Boord's written statement was more reliable than her testimony at the hearing.

Moreover, the written statement and the officers' testimony as to what Boord told them provide substantial evidence of a nexus between Chiodo's 1994 Pontiac and his drug dealing activities. Contrary to Chiodo's argument that the statement shows no direct knowledge of the automobile's use for drug dealing, several of the observations contained in the statement bear directly on such involvement. Boord's written statement expressly asserts: "I know that Tom [Chiodo] would leave in his white G[rand] P[rix] with pot on him to take pot to someone ... that I know of he was taking an [eighth of an ounce] with him to sell." It further states that Chiodo used the 1994 Pontiac Grand Prix to pick up two or three ounces of marijuana a week to be sold to others. The district court did not err in finding that Boord's written statement, along with Chiodo's undisputed admission that he sold marijuana and the discovery of numerous items pointing toward drug dealing, provided substantial evidence that Chiodo used the automobile as a part of his drug dealing operation.[5] There also was evidence Chiodo told the officers that his source of supply for marijuana was his brother, who lived one to one and one-half miles away.

We conclude there was a substantial connection between Chiodo's automobile and his drug dealing operation, as well as possession of marijuana under section 124.401(3), such as to uphold forfeiture of the vehicle.

Having concluded that Chiodo's 1994 Pontiac is "forfeitable property" under Iowa Code section 809.1(2), we turn now to Chiodo's Eighth Amendment argument.

■ B. *Forfeiture of Chiodo's automobile as an unconstitutionally excessive fine.* We have said that the forfeiture provisions of Iowa Code chapter 809 are penal in nature and must be strictly construed. *See In re Property Seized from Wagner,* 482 N.W.2d 160, 162 (Iowa 1992); *Kaster,* 454 N.W.2d at 877. In *Dykes,* we also acknowledged that forfeitures could be constitutionally restricted:

> Cases can be imagined where property forfeited could be so out of proportion to an insignificant public offense as to constitute an unconstitutionally excessive fine under the eighth amendment to the federal constitution.

*Dykes,* 471 N.W.2d at 848. Since *Dykes* was decided, the United States Supreme Court has held that civil forfeitures under two federal statutes are subject to an excessive fines analysis because the statutes are, at least in part, punitive. *Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488, 505–06 (1993).

Although the Court in *Austin* declined to establish a test for determining whether a forfeiture is constitutionally excessive, the United States Court of Appeals for the Eighth Circuit has suggested an approach that might assist our inquiry. *See United States v. Bieri,* 68 F.3d 232, 236 (8th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996). Under the Eighth Circuit's test, the defendant must first make a prima facie showing of "gross disproportionality." *Id.* (citations omitted). To constitute a violation of the Eighth Amendment, such disproportionality must be so excessive that "in justice the punishment is more criminal than the crime." *Id.* (citations omitted). Disproportionality is assessed by examining several factors:

> To determine whether the facts indicate gross disproportionality, the district court

---

**5.** Chiodo claims that conclusions reached by the district court regarding Chiodo's earnings from legitimate employment and the equity value of the automobile are not based on evidence in the record. Without determining whether that is the case, we note that such conclusions are not essential to our analysis.

must consider multiple factors, including the extent and duration of the criminal conduct, the gravity of the offense weighed against the severity of the criminal sanction, and the value of the property forfeited.... "Other helpful inquiries might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct."

*Id.* (citations omitted).

Before undertaking such an analysis, we note that the nature of civil forfeitures precludes a precise balancing of the value of the forfeited property against the purposes served by the forfeiture. The United States Supreme Court recently reiterated that civil forfeitures may have both punitive and remedial characteristics. *See United States v. Ursery,* 518 U.S. ——, —— – ——, 116 S.Ct. 2135, 2146–47, 135 L.Ed.2d 549, 567 (1996). The Court reflected on the difficulty of identifying the value to be placed on the goals underlying forfeiture:

Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. Though it may be possible to quantify the value of the property forfeited, it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture.

*Id.* at ——, 116 S.Ct. at 2145, 135 L.Ed.2d at 565.

The provisions of Iowa Code section 809.1 evince multiple goals. Section 809.1(2) allows forfeiture of property which is illegally possessed, used for the commission of a criminal offense, acquired as a result of criminal activity, or offered to induce another to engage in criminal activity. Iowa Code § 809.1(2). Thus, that subsection is designed to fulfill such purposes as confiscating illegally acquired property, discouraging the commission of crimes, and preventing individuals from profiting from illegal activity.

Although a balancing of the value of the forfeited property with the illegal activity is inherent to an assessment of proportionality, insisting on mathematical exactitude diminishes the concerns underlying the forfeiture provisions. With that qualification in mind, we proceed to address the forfeiture in the present case.

While there is some dispute as to the equity value Chiodo had in the 1994 Pontiac Grand Prix, the record indicates that the car was purchased in July, 1994 for approximately $20,000.00. During the district court hearing, Chiodo's counsel referred several times to a $9,000.00 lien on the automobile. The district court calculated that Chiodo's equity value in the car was between $8,000.00 and $9,000.00. Under Chiodo's figures, his equity in the automobile would be about $11,000.00, not factoring in depreciation. Our analysis does not depend upon an exact figure.

Balanced against the value of the automobile is the extent of Chiodo's criminal activity. Chiodo admitted that he sold drugs. Marijuana, scales, baggies, and other drug-related paraphernalia were found in Chiodo's house, automobile, and on his person. There is substantial evidence showing that Chiodo engaged in drug dealing on a regular basis, selling drugs to several persons each night. Boord's statements to the officers and her written statement assert that Chiodo sold between two and three ounces of marijuana, divided into one-eighth portions selling for twenty to twenty-five dollars per portion, each week. From that evidence, the district court concluded that Chiodo earned from $75.00 to $100.00 per diem selling drugs and thus that he was not a "small dealer." As the district court pointed out, Chiodo's drug dealing was thus extensive enough to provide a considerable amount of the money needed for his rent and automobile payments. There is also substantial evidence that Chiodo used his car as a part of that enterprise.

Under those facts, we do not believe forfeiture of an automobile with an equity of between $8,000.00 and $11,000.00 to Chiodo constitutes an excessive fine. Forfeiture of Chiodo's 1994 Pontiac does not violate the Eighth Amendment.

IV. *Disposition.* We affirm the judgment of the district court denying Chiodo's application for the return of seized property and ordering forfeiture of the 1994 Pontiac Grand Prix to the State of Iowa.

Costs on appeal are taxed to Chiodo.

**AFFIRMED.**

All justices concur except LAVORATO, J., who takes no part.