# IN THE SUPREME COURT OF IOWA

No. 17–1237

Filed April 27, 2018

**IN THE MATTER OF PROPERTY SEIZED FROM BO (BRIAN) LI, NA TIAN,** and **WEI TIAN.**

**STATE OF IOWA,**

Appellant.

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

State appeals judgment dismissing civil in rem forfeiture action against spa advertising massages. **AFFIRMED.**

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Ralph Potter, County Attorney, and Brigit Barnes, Assistant County Attorney, for appellant.

Christopher M. Soppe of Pioneer Law Office, Dubuque, for appellees.

**WATERMAN, Justice.**

This appeal presents a question of statutory interpretation: whether practicing massage therapy without a license constitutes a serious misdemeanor. Police, responding to complaints by neighbors suspecting prostitution, conducted surveillance on a spa in Dubuque advertising massage services. Police raided the business and seized cash, cell phones, and other property. The State filed a civil in rem forfeiture action alleging the cash was the proceeds of an unlicensed massage business or prostitution. Following a bench trial, the district court found the State failed to meet its burden to prove prostitution and ruled that practicing massage therapy without a license was not a crime and therefore could not support forfeiture. The district court dismissed the forfeiture action and ordered the cash returned to the claimants. The district court, however, denied the claimants' application for return of the other property and allowed the State to retain that property pursuant to its ongoing criminal investigation. The State appealed, and we retained the case. The claimants did not cross-appeal.

For the reasons explained below, we hold that practicing massage therapy without a license is not a serious misdemeanor. We affirm the district court's ruling finding that the State failed to prove prostitution and affirm the district court's judgment returning the cash to the claimants. Because the claimants failed to file a cross-appeal, we do not review the district court's ruling allowing the State to retain the remaining property while it completes its investigation.

## I. Background Facts and Proceedings.

The claimants, Bo Li, Wei Tian, and Na Tian all live together in Dubuque. Wei Tian and Na Tian are sisters, and Wei Tian is dating Bo Li. Li owns Therapeutic Spa, located in Dubuque. Li, Wei Tian, and Na Tian

all work at Therapeutic Spa, which provides massages and accupressure to its clients. None of them have a massage therapy license. When Li purchased the business from Hong Zhou in September 2016, he kept the name because he thought it "promote[d] health" and because he could save money by retaining the signage. Wei Tian and Na Tian sell dresses online to make additional money. They planned to open a dress store in Dubuque.

In the summer of 2016, months before Li purchased Therapeutic Spa, police began investigating the business after neighbors complained of hearing "sexual-type noises" inside. The police found Therapeutic Spa listed on Craigslist and on "Rubmaps," a website which reviews businesses that offer sex services. Claimants learned that the business was listed on Rubmaps when they applied for a credit card machine. They wrote and emailed Rubmaps requesting that the business information be removed from that website.

City of Dubuque police officers conducted surveillance of the business over several weeks. The daily surveillance varied from several hours to the entire day. The police saw only male customers entering the business, though Wei Tian later testified that the spa kept a list of customers and identified names of female customers.

One night, the police observed two females remove a trash bag from the spa, ignore the dumpster behind the business, and dispose of the garbage at the claimants' shared residence. The police seized the trash bag and found strips of toilet paper that appeared to be soiled with semen and fecal matter. They sent the toilet paper to the Iowa Division of Criminal Investigation (DCI) Criminalists Laboratory for analysis. Criminalists at the DCI laboratory confirmed the presence of semen but did not run a DNA test.

Claimants testified that they threw away the trash at their personal residence because the hair salon next door paid for the dumpster behind the building and did not allow them to use it. One officer testified that he never saw the women use the dumpster behind the building. Additionally, Wei Tian claimed that she and Li engaged in sexual relations at the business, so the semen on the toilet paper would have come from Li.

In February 2017, Dubuque police officers obtained and executed a search warrant for the business and the claimants' apartment. During the search, officers seized $16,278 from Li, $4341 from Na Tian, and $858 from Wei Tian. They also seized electronic devices (including phones and an iPad™), several prepaid cards, and paper records.

The State filed in rem forfeiture complaints against Li, Wei Tian, and Na Tian pursuant to Iowa Code sections 809A.13 and 809A.8(1)(*a*)(2) (2017), seeking to forfeit the seized cash. In each complaint, the State alleged that the "[p]roperty was acquired from or is proceeds of a crime." Li, Wei Tian, and Na Tian each filed an answer to the in rem forfeiture complaints, claiming that "[t]he money was not the proceeds from any criminal activity." The claimants also filed applications for return of the other property that had been seized.

In April, an undercover officer conducted a sting operation that resulted in the arrest of a woman who solicited the officer for sex at a hotel in Dubuque. Upon their search of the woman's hotel room, officers found a business card for Therapeutic Spa in the woman's purse.

On May 9, the district court held a civil forfeiture hearing, as well as a hearing on the claimants' applications for return of seized property, and granted the parties additional time to file briefs. The State claimed the cash was forfeitable as proceeds of either prostitution or the unlicensed practice of massage therapy. The State argued that practicing massage

therapy without a license is a serious misdemeanor and therefore could serve as the predicate offense to forfeiture. The claimants argued that the unlicensed practice of massage therapy was not a forfeitable offense. They also contended that the State failed to prove the cash was proceeds from prostitution.

The district court entered its ruling on July 28. The court determined that practicing massage therapy without a license is not a serious misdemeanor and therefore cannot support forfeiture. The court reached that decision by determining that Iowa Code section 152C.4 provides a specific penalty—a civil fine—for practicing massage therapy without a license. As a result, section 147.86, which provides that any violation of a provision of that subtitle constitutes a serious misdemeanor unless a specific penalty is otherwise provided, does not apply.

The district court also found that the State had not proved by a preponderance of the evidence that the seized funds were the proceeds of prostitution, so the money could not be forfeited on that ground. The court acknowledged it was suspicious of the claimants' actions. But the court explained that "forfeiture is a significant exercise of the State's power[,] and it requires more than a suspicion." The court denied all three of the State's in rem forfeiture complaints.

Finally, the court denied the claimants' applications for return of the noncash assets, concluding they were properly retained by law enforcement under Iowa Code section 809.5 because they were "required for use in an investigation." The court acknowledged that law enforcement was experiencing difficulty because the data on the electronic devices was in Mandarin, so the time the State retained the assets was reasonable.

The State appealed, and we retained the appeal.

## II. Standard of Review.

"We review questions of statutory construction . . . for errors at law." *State v. Iowa Dist. Ct.*, 888 N.W.2d 655, 662 (Iowa 2016) (quoting *Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473, 477 (Iowa 2010)). We review forfeiture proceedings "for correction of errors at law." *In re Prop. Seized for Forfeiture from Young*, 780 N.W.2d 726, 727 (Iowa 2010). In a forfeiture proceeding, "[w]e examine the evidence in the light most favorable to the district court judgment and construe the district court's findings liberally to support its decision." *In re Prop. Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996). The district court's "findings are binding on us if supported by substantial evidence." *Id.* The "possibility that inconsistent conclusions might be drawn from the same evidence does not preclude a finding from being supported by substantial evidence." *In re Prop. Seized from DeCamp*, 511 N.W.2d 616, 619 (Iowa 1994).

## III. Analysis.

We must decide whether the district court erred in rejecting the State's forfeiture claims. The State argues the defendants' cash is subject to forfeiture as proceeds of a crime because the seized cash is the proceeds of an unlicensed massage business, a prostitution operation, or both. Under Iowa Code section 809A.4(3), "[a]ll proceeds of any conduct giving rise to forfeiture" are subject to forfeiture. The conduct that may give rise to forfeiture includes "[a]n act or omission which is a public offense and which is a serious or aggravated misdemeanor or felony." Iowa Code § 809A.3(1)(*a*). The State has "the initial burden of proving the property is subject to forfeiture by a preponderance of the evidence." *Id.* § 809A.13(7) (2017).[1] "If the state so proves the property is subject to forfeiture, the

---

[1]In 2017, the legislature changed the state's burden of proof to clear and convincing evidence. 2017 Iowa Acts ch. 114, § 10 (codified at Iowa Code § 809A.13(7)

claimant has the burden of proving that the claimant has an interest in the property which is exempt from forfeiture . . . by a preponderance of the evidence." *Id.*

"Forfeitures are not favored under the law[,] and this court strictly construes statutes allowing forfeitures." *In re Prop. Seized for Forfeiture from Williams*, 676 N.W.2d 607, 612 (Iowa 2004). Forfeiture statutes have faced increasing criticism in recent years. *See, e.g., Leonard v. Texas,* ___ U.S. ___, ___, 137 S. Ct. 847, 848–49 (2017) (Thomas, J., statement respecting denial of certiorari) (acknowledging that civil forfeiture operations—which have become more "widespread and highly profitable" in recent decades—"frequently target the poor and other groups least able to defend their interests in forfeiture proceedings" and expressing skepticism over the constitutionality of the modern practice of civil forfeiture); *People ex rel. Hartrich v. 2010 Harley-Davidson,* ___ N.E.3d ___, ___, 2018 WL 915075, at *14 (Ill. Feb. 6, 2018) (Karmeier, C.J., dissenting) (emphasizing that "courts must be vigilant in safeguarding the rights of innocent persons who have legitimate interests in the property at issue"). Against this backdrop, we turn to the issues presented in this appeal.

**A. Whether Practicing Massage Therapy Without a License Is a Serious Misdemeanor Under Iowa Code Section 147.86.** We must decide whether the unlicensed practice of massage therapy is a serious misdemeanor. This is a question of statutory interpretation. We begin with the statutory text. *McGill v. Fish,* 790 N.W.2d 113, 118 (Iowa 2010)

---

(2018)). The amendment also changed the claimant's burden of proof so that the claimant is only required to make a prima facie showing that an exemption exists. *Id.* Finally, if the claimant makes such a showing, the amended statute requires the state to prove by clear and convincing evidence that the exemption does not apply. *Id.* This amendment only applies to forfeiture proceedings that began on or after July 1, 2017, and, therefore, does not apply to this case, in which the forfeiture complaint was filed February 23, 2017. *See* 2017 Iowa Acts ch. 114, § 15; *see also* Iowa Code § 3.7(1) (2017).

("[O]ur starting point in statutory interpretation is to determine if the language has a plain and clear meaning within the context of the circumstances presented by the dispute.").

Under Iowa Code section 147.2, "[a] person shall not engage in the practice of . . . massage therapy . . . unless the person has obtained a license for that purpose from the board for the profession." Iowa Code § 147.2(1). Later in that chapter, the Code states, "Any person violating any provision of this subtitle, *except . . . where a specific penalty is otherwise provided*, shall be guilty of a serious misdemeanor." Iowa Code § 147.86 (emphasis added). Here, a specific penalty is otherwise provided.

Subtitle 3 of Title IV of the Iowa Code encompasses both chapter 147 and chapter 152C, which deals exclusively with massage therapy. Iowa Code section 152C.5 prohibits the unlicensed practice of massage therapy.[2] Section 152C.4 provides a specific civil penalty for practicing massage therapy without a license:

> The board may, by order, impose a civil penalty upon a person who practices as a massage therapist without a license issued under this chapter or a person or business that employs an individual who is not licensed under this chapter. The penalty shall not exceed one thousand dollars for each offense. Each day of a continued violation after an order or citation by the board constitutes a separate offense, with the maximum penalty not to exceed ten thousand dollars.

*Id.* § 152C.4(1).

---

[2]Section 152C.5 provides,

> The practice of massage therapy as defined in section 152C.1 is strictly prohibited by unlicensed individuals. It is unlawful for a person to engage in or offer to engage in the practice of massage therapy, or use in connection with the person's name, the initials "L.M.T." or the words "licensed massage therapist", "massage therapist", "masseur", "masseuse", or any other word or title that implies or represents that the person practices massage therapy, unless the person possesses a license issued under the provisions of section 152C.3.

Iowa Code § 152C.5.

The language of section 147.86 is unambiguous: a person who violates a provision of subtitle 3 is guilty of a serious misdemeanor, "*except where a specific penalty is otherwise provided.*" *Id.* § 147.86 (emphasis added). Section 152C.4 provides for a civil penalty for practicing massage therapy without a license. *Id.* § 152C.4. The district court concluded this civil penalty exempts the unlicensed practice of massage therapy from criminal liability under section 147.86. We agree. Under the plain meaning of these statutes, the unlicensed practice of massage therapy is not a serious misdemeanor and, therefore, cannot be the predicate offense for forfeiture.

Our conclusion is reinforced by other licensing provisions, which show that when the legislature chooses to criminalize practicing without a license, it says so expressly. For example, as the district court noted, chapter 152D provides that "[i]t is unlawful for a person to engage in the practice of athletic training . . . unless the person is licensed pursuant to this chapter." *Id.* § 152D.7(2). The next subsection expressly provides, "A person who violates a provision of this chapter is guilty of a serious misdemeanor." *Id.* § 152D.8. Reading the statutes together, we can conclude that if the legislature had intended to make practicing massage therapy without a license a serious misdemeanor, it would have said so in chapter 152C, as it did in section 152D.8 for athletic trainers. *See Shumate v. Drake Univ.*, 846 N.W.2d 503, 512 (Iowa 2014) (determining legislative intent by noting "closely related chapters demonstrate that when the legislature 'wished to provide a private damage remedy, it knew how to do so and did so expressly' " and acknowledging that the legislature did not do so in the provision at issue (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 572, 99 S. Ct. 2479, 2487 (1979))); *Oyens Feed & Supply, Inc. v. Primebank,* 808 N.W.2d 186, 193 (Iowa 2011) ("The

legislature selectively incorporated the prefatory clause, 'Except as provided in section 570A.2, subsection 3,' into section 570A.5 subsection (2) but not subsection (3). We presume this clause was located in subsection (2) for a reason—to apply the affirmative defense *solely* to the equal priority lien recognized in that subsection." (Emphasis added.)); *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 812 (Iowa 2011) (relying on selective placement and omission of phrase in related statutes to determine meaning).

The State suggests the words "strictly prohibited" and "unlawful" as used in section 152C.5 show the legislature intended the unlicensed practice of massage therapy to be a serious misdemeanor. We disagree. The legislature also used the word "unlawful" in section 152D.7(2). Interpreting the use of the word "unlawful" to automatically make an act a serious misdemeanor would render section 152D.8 surplusage. *See State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017) ("[W]e try to interpret statutes in a way that avoids rendering parts of them superfluous." (quoting *State v. Merrett*, 842 N.W.2d 266, 275 (Iowa 2014))).[3]

Under the State's interpretation, a friend without a license for massage therapy who exchanges a backrub for ten dollars would be committing a serious misdemeanor punishable by a one-year jail sentence. The State's statutory interpretation depends on a finding of ambiguity and would violate "the rule of lenity, which guides us to resolve ambiguous criminal statutes in favor of the accused." *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013). By contrast, our holding serves the purposes of the rule of lenity: "providing fair notice that conduct is subject to criminal

---

[3]The State also contends the legislative history supports the conclusion that the unlicensed practice of massage therapy is a serious misdemeanor. The district court determined that the legislative history is inconclusive. We reach the same conclusion and rely on our textual analysis instead.

sanction" and "promoting separation of powers by ensuring that crimes are created by the legislature, not the courts." *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011).[4] The legislature is free to criminalize the unlicensed practice of massage therapy but has not done so yet.

**B. Whether the District Court Erred in Finding the State Failed to Meet Its Burden of Proving the Seized Funds Are Proceeds of Prostitution.** We next consider whether the district court erred in finding that the State did not meet its burden of proving that the seized funds are proceeds of prostitution.[5] The district court concluded,

> [F]orfeiture is a significant exercise of the State's power[,] and it requires more than a suspicion. It requires that the State prove by a preponderance of the evidence that the money it seized is the proceeds of an act constituting a serious misdemeanor, aggravated misdemeanor or felony. The State has not met this burden.

The State acknowledges this "heavy burden" but argues that "the circumstantial evidence of prostitution is simply overwhelming." We disagree. The State offered no direct testimony by an undercover officer or customer that sex was for sale at the spa. The claimants denied they engaged in prostitution and had plausible explanations for the evidence relied upon by the State. We must view the evidence in the light most favorable to the district court judgment. *In re Prop. Seized from Chiodo*, 555 N.W.2d at 414. The district court's factual findings supported by substantial evidence are binding on appeal. *Id.* The "possibility that inconsistent conclusions might be drawn from the same evidence does not

---

[4]When interpreting statutes, we turn to the rule of lenity as a last resort. *State v. Velez*, 829 N.W.2d 572, 585 (Iowa 2013) ("[W]e only invoke the rule of lenity after we have 'exhausted all interpretive techniques.'" (quoting *Hearn*, 797 N.W.2d at 586)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 197 (2012) ("[T]he rule of lenity applies only when a reasonable doubt persists *after* the traditional canons of interpretation have been considered.").

[5]Prostitution is an aggravated misdemeanor under Iowa Code section 725.1.

preclude a finding from being supported by substantial evidence." *In re Prop. Seized from DeCamp*, 511 N.W.2d at 619. We review the record to evaluate the State's claim that it proved prostitution by overwhelming evidence.

The State notes that Li did not change the name of the spa after purchasing it, despite knowing that, under the previous owner, the spa was "tied to maybe something . . . to do with sexual things." Additionally, the reputation of Therapeutic Spa made it more difficult for the claimants to get a credit card machine. But Li provided plausible reasons for keeping the name: he thought it "promote[d] health," and it allowed him to save money by not having to purchase new signs.

The listing of Therapeutic Spa on Rubmaps also does not conclusively establish that the claimants engaged in prostitution; the business was originally listed there before Li took ownership, and he testified he attempted to remove the spa's business information from the website.

The State points out that one Rubmaps user, who reviewed the spa before Li took ownership, also left a review of a massage by "Alice" at Therapeutic Spa after Li purchased the business. The schedules presented by the claimants referred to Wei Tian and Na Tian as "Jess" and "Alice," respectively. Two subsequent reviews were written by premium Rubmaps members (members who pay monthly or yearly fees to access reviews and ratings of businesses on the website). The State suggests that these premium members "did not see anything in the review about 'Alice' that had dissuaded them from visiting Therapeutic Spa." The State further speculates that the members would have "declin[ed] to visit any massage parlor that was receiving reviews . . . that cautioned that sexual contact

with masseuses was prohibited." The district court was not required to credit this hearsay evidence as proving prostitution.

The State notes that officers who conducted surveillance testified that only male customers were entering the spa. But the police did not conduct surveillance around the clock. Wei Tian testified that the spa kept a list of customers and identified female customers. A detective testified a male customer reported sexual activity at the spa. The customer did not testify; nor did the neighbors who complained they heard sexual noises there. The district court could give such hearsay no weight.

The State also argues the disposal of trash at a personal residence—instead of using the dumpster near the spa—is probative of guilt, as is the presence of semen on toilet paper found in the spa's garbage. If the semen on the toilet paper in the trash was from Li, as Wei Tian testified, "there would be no need for clandestine disposal." Yet Wei Tian testified that the hair salon next to the spa owned the dumpster and did not let the spa use it. Their innocent explanations for this evidence are plausible. Credibility determinations are for the district court as the finder of fact.

The district court found the cash in the claimants' possession to be "most compelling," noting that the claimants had a bank account into which they could have deposited the funds. A detective testified that keeping a large amount of cash at a residence instead of a bank account "is an indicator that there is potential money laundering going on or . . . is an attempt to hide the assets of [a] business." But the district court concluded, "[T]he State did not establish to the Court's satisfaction that any laundering was occurring or that the seized money was tied to a specific criminal act or acts." At the hearing, Wei Tian testified that the claimants were going to deposit the cash into a new account for the dress store they planned to open. She also provided an explanation for why the

claimants did not deposit the money in Therapeutic Spa's existing bank account: she believed transferring large sums of money from an existing account to a new account "would become a tedious process because there are daily limits as to how much you can take out." Moreover, the claimants experienced delays in their effort to obtain a credit card machine.[6]

The district court found that the State failed to meet its burden to prove the seized cash was the proceeds of prostitution. That finding is supported by substantial evidence. Viewing the evidence in the light most favorable to the district court's judgment, we must affirm.

**C. Whether the District Court Properly Denied Claimants' Applications for Return of Seized Property.** The district court ruled that the State could retain the noncash property (including the cell phones and iPad™) for its ongoing criminal investigation pursuant to Iowa Code section 809.5. The district court determined that "law enforcement was making a reasonable effort to conclude the investigation in a timely manner" given delays translating data on the electronic devices in Mandarin. The claimants did not file a cross-appeal of that adverse ruling. *See* Iowa R. App. P. 6.101(2)(*b*) (providing that "any notice of cross-appeal must be filed within the 30-day limit for filing a notice of appeal, or within 10 days after the filing of a notice of appeal, whichever is later"). For that reason, claimants failed to preserve this issue for our review, and we decline to reach it. *Hagen*, 840 N.W.2d at 144 n.3 ("Hagen did not file an appeal or cross-appeal on the issue of the underlying tax due of $10,355 as determined by the district court. Therefore, this issue has not been preserved for appeal."); *Ten Hagen v. DeNooy*, 563 N.W.2d 4, 10 (Iowa Ct.

---

[6]The district court incorrectly found that the claimants were "forced to deal in cash" because they had not yet obtained a credit card machine. But the record shows the claimants were able to obtain a credit card machine after a delay.

App. 1997) ("It cannot go unnoticed that plaintiff did not file a cross-appeal in this matter. Plaintiff was the unsuccessful party when the case was tried on the merits; thus, we do not believe error has been adequately preserved on this issue for our review.").

## IV. Disposition.

For these reasons, we affirm the judgment of the district court denying the State's in rem forfeiture action and ordering return of the cash to the claimants, while allowing the State to retain the phones, computers, and paper records pending completion of its criminal investigation.

**AFFIRMED.**

All justices concur except Hecht, J., who takes no part.