**IN THE COURT OF APPEALS OF IOWA**

No. 18-1902
Filed July 22, 2020

**IN THE MATTER OF PROPERTY SEIZED FROM DALLAS EDWARD FORKNER,**

**DALLAS EDWARD FORKNER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Boone County, Steven J. Oeth,

Judge.


        Dallas Forkner appeals from the district court's order forfeiting his property.

**AFFIRMED.**


        Nathan A. Olson and Christine E. Branstad of Branstad & Olson Law Office,

Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.


        Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Dallas Forkner appeals an in rem forfeiture order for cash found during a search of his home. On appeal, he raises multiple arguments relating to the denial of his motion to suppress and the district court's forfeiture determination. We affirm.

**I. Background Facts and Proceedings**

In August 2016, Forkner was involved in a traffic stop that ended with his arrest. During a search of the car, police found over $3100, two glass pipes used for methamphetamine consumption, unused packaging for narcotics, a stun gun, and a cell phone.

The Boone Police Department began investigating Forkner and his drug-related activities. Police obtained a search warrant for the cell phone. A search of the phone revealed "multiple conversations involving multiple persons that appeared consistent with narcotics trafficking."

In September, police executed a search warrant at Forkner's home. During the search, police recovered over $6000, methamphetamine, more narcotics packaging, scales with drug residue, and a stolen firearm.

In June 2017, police witnessed an encounter between Forkner and a suspected drug-distribution associate. Shortly after the encounter, police stopped a vehicle driven by the associate—Forkner was a passenger—and arrested the associate for driving offenses. Police found a pipe, methamphetamine residue, and methamphetamine packages in the vehicle.

Then in July, police performed a "trash rip" at Forkner's home. They collected a glass pipe from Forkner's trash.

Citing these prior incidents, police applied for and obtained another search warrant for Forkner's home. Police executed the warrant the same day as the trash rip. Police found a pound of marijuana and about $45,000 in a closet. And police recovered a scale, methamphetamine, packaging for narcotics, and more cash from other areas of the home.

In August, the State filed an in rem forfeiture complaint seeking $45,900.[1] *See* Iowa Code § 809A.13 (2017). Forkner filed a motion to suppress, arguing the search was unconstitutional and therefore the State could not rely on the evidence seized. The district court denied the motion. In September 2018, a forfeiture hearing was held. The district court later entered an order forfeiting the money. Forkner appeals.

**II. Standards of Review**

We review the denial of a motion to suppress de novo. *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015). "In our review, we must make 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.* (quoting *Tyler*, 867 N.W.2d at 152).

We review forfeiture proceedings for correction of errors at law. *In re Prop. Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996). "The evidence is examined in the light most favorable to the district court's judgment, and its findings

---

[1] In November 2017, Forkner pled guilty to possession with intent to deliver methamphetamine in two separate cases.

are construed liberally to support the judgment; however, the findings are only binding if we determine they are supported by substantial evidence." *In re Prop. Seized from Thao*, No. 14-1936, 2016 WL 1130280, at *4 (Iowa Ct. App. Mar. 23, 2016).

## III. Motion to Suppress

Forkner contends the district court erred in denying his motion to suppress for three reasons: (1) the information in the warrant application was stale, (2) the police failed to include necessary information in the application, and (3) probable cause did not support the warrant. We address each claim below.

### A. Staleness

Forkner argues "[t]he warrant application was replete with stale information on which a judge may not rely for a probable cause determination." He points out that the information dates back almost a year before the application was filed. And probable cause diminishes quickly when narcotics are at issue. But the State contends "Forkner's ongoing connection with illegal drugs up to the day of the search warrant" eliminates any concern of staleness.

"Because probable cause requires a reasonable belief that evidence of a crime will be found on the premises to be searched, it is important the information upon which this belief is based be current and not remote in time." *State v. Gogg*, 561 N.W.2d 360, 367 (Iowa 1997). But "[t]he passage of time alone is not determinative; whether information is stale depends on the circumstances of the case." *Id.*; *accord State v. Bean*, 239 N.W.2d 556, 559 (Iowa 1976) ("A claim of staleness of facts precluding issuance of the warrant is not to be determined by a mere computation of the number of elapsed days."). "Where an isolated

observance of a drug offense is involved, 'probable cause diminishes quickly,' due in large part to the fact that drugs are 'readily consumable or transferable.'" *State v. Strough*, No. 10-1544, 2011 WL 4578406, at *3 (Iowa Ct. App. Oct. 5, 2011) (quoting *Gogg*, 561 N.W.2d at 367). "By contrast, where information concerning ongoing drug-related activities is presented to a magistrate, 'the passage of time is less problematic because it is more likely that these activities will continue for some time into the future.'" *Id.* (quoting *Gogg*, 561 N.W.2d at 367).

The July 2017 warrant application detailed an investigation of Forkner that began "[i]n August and September of 2016." It discussed various events including the August 2016 traffic stop, the September 2016 search of Forkner's home, the June 2017 traffic stop, and the July 2017 trash pull. During each of these events, police recovered evidence indicating involvement with drugs and, in most cases, drug distribution. At the August 2016 traffic stop, police found over $3000, two glass pipes used for methamphetamine, and packaging materials for narcotics. A cellphone was also confiscated, and, after a search warrant was acquired, police discovered multiple conversations consistent with narcotics trafficking. Then, at the September 2016 search of Forkner's home, police found more money, methamphetamine, packaging, and scales. In June 2017, police pulled over Forkner and a suspected associate. Police found packaging materials, paraphernalia, and methamphetamine in the vehicle. And the trash rip in July 2017 recovered a methamphetamine pipe.

Because the affidavit showed Forkner was involved in ongoing drug-related activities rather than one isolated incident, we do not believe the passage of time is problematic. *See id.* So we determine staleness was not an issue here.

**B. Necessary Information**

Forkner next contends police "intentionally omitted" that the large sum of cash was from casino winnings from the warrant application. Such omission, Forkner argues, misled the magistrate when evaluating probable cause. The State contends the district court correctly found the money was immaterial to the probable cause determination.

"[A]n officer applying for a search warrant 'is not required to present all inculpatory and exculpatory evidence to the magistrate,' only that evidence which would support a finding of probable cause." *State v. Green*, 540 N.W.2d 649, 657 (Iowa 1995) (citation omitted). "An omission of a material fact constitutes a misrepresentation only when the omitted facts cast doubt on the existence of probable cause." *State v. Ramon*, No. 08-0151, 2009 WL 139541, at *2 (Iowa Ct. App. Jan. 22, 2009). The warrant application includes one sentence referencing the large sum of money. The applying officer indicated that: "I have been informed that Forkner recently showed employees of the Iowa Department of Human Resources and Iowa Department of Corrections a large sum of US currency." But the application also includes three pages of information detailing the police's investigation of Forkner—including that police discovered illegal substances, paraphernalia, and packaging as well as evidence of Forkner's communication with "persons known to sell and/or use illegal controlled substances." The fact that Forkner won the "large sum of US currency" from a casino does not "cast doubt on the existence of probable cause." *See id.*

**C. Probable Cause**

Next, Forkner asserts there was no probable cause sufficient to support the issued warrant. He contends (1) there was "no actual showing any criminal activity occurred" at his home, (2) suspicion of a simple misdemeanor does not warrant the violation of the protections afforded to private residences, and (3) the "sheer breadth" of the warrant "effectively transforms the issued warrant into a general warrant that is prohibited under the Fourth Amendment and [a]rticle I, section 8 of the Iowa Constitution."

"A search warrant must be supported by probable cause." *State v. Baker*, 925 N.W.2d 602, 613 (Iowa 2019) (citing Iowa Const. art. I, § 8). "We use the totality-of-the-circumstances standard to determine whether officers established probable cause for issuance of a search warrant." *Id.* "The test for probable cause is 'whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there.'" *Id.* (quoting *Gogg*, 561 N.W.2d at 363). On appeal, "[w]e do not attempt to independently determine probable cause but rather 'merely decide whether the issuing judge had a substantial basis for concluding probable cause existed.'" *State v. Shanahan*, 712 N.W.2d 121, 132 (Iowa 2006) (quoting *Gogg*, 561 N.W.2d at 363). "Our determination of a substantial basis is 'limited to consideration of only that information, reduced to writing, which was actually presented to the [judge] at the time the application for warrant was made.'" *Id.* (alteration in original) (quoting *Gogg*, 561 N.W.2d at 363). We also note that "the information needed for a finding of probable cause to support a search warrant is far less demanding than

the information necessary to sustain a conviction." *State v. Wells*, 629 N.W.2d 346, 355 (Iowa 2001).

When denying Forkner's motion to suppress, the district court stated:

The facts [in the warrant application] show an investigation into Forkner's drug use/dealing since August of 2016. Details were provided regarding: (1) a traffic stop; (2) a search of his house in September of 2016; (3) an encounter on June 4, 2017[,] with another individual where significant contraband was discovered; and (4) a trash pull on July 7, 2017, the day of the warrant application, which showed indications of drug use at the place to be searched. The facts of all of these incidents show Forkner being involved with significant drug use or dealing. In the court's view, these facts clearly show probable cause, and Forkner's motion must be overruled based on the argument that probable cause was lacking.

We agree.

Police had been investigating Forkner for almost a year. Throughout that year, police recovered drugs, distribution materials, or paraphernalia during multiple encounters with Forkner. All of this suggests he was involved in drug-related activities. Moreover, "[i]t is reasonable to assume that persons involved with drug trafficking would keep evidence—drugs, weighing and measuring devices, packaging materials[,] and profits—at their residences." *State v. Godbersen*, 493 N.W.2d 852, 855 (Iowa 1992); *see also State v. Stephens*, No. 15-1117, 2016 WL 4036137, at *5 (Iowa Ct. App. July 27, 2016) ("[B]ecause the observations indicated apparent drug-dealing behaviors, it was logical for officers to search Stephens's home and vehicles."). In fact, a prior search of Forkner's home in September 2016 revealed he kept drugs, packaging materials, weighing materials, and large amounts of cash at his home.

Considering these facts, it was reasonable to believe that Forkner would have relevant evidence in his home again. *See State v. Padavich*, 536 N.W.2d

743, 748 (Iowa 1995) (noting "the magistrate may consider a suspect's history of involvement in the drug trade" when determining probable cause); *cf. State v. Higgins*, No. 18-1863, 2020 WL 1551202, at *4 (Iowa Ct. App. Apr. 1, 2020) (reversing the denial of a motion to suppress and noting a finding of probable cause "requires more than speculation by law enforcement that a person who associates with other drug users or dealers is probably dealing drugs himself"). Therefore, we conclude the district court had substantial basis for concluding probable cause existed. Moreover, the warrant issued described the places to be searched—including Forkner's residence—with sufficient particularity. *See, e.g.*, *State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995) (stating the particularity requirement "is not to mean that a hypertechnical, perfectly accurate description must be provided, rather, that the descriptions in the warrant and affidavits be 'sufficiently definite to enable the searcher to identify the persons, places[,] or things the magistrate has previously determined should be searched or seized'" (citation omitted)).

## IV. Forfeiture

Finally, Forkner argues the district court erred in forfeiting his property for three reasons: "(1) the State is not entitled to a presumption the casino winnings are forfeitable; (2) forfeiture violates Iowa law and Forkner's constitutional rights; and (3) regardless of any presumption, the casino winnings do not meet the definition of property subject to forfeiture under the Iowa Code."

Civil forfeiture is "designed to fulfill such purposes as confiscating illegally acquired property, discouraging the commission of crimes, and preventing individuals from profiting from illegal activity." *Chiodo*, 555 N.W.2d at 417. "An

order of forfeiture will not be reversed unless the evidence is utterly wanting to support the conclusion of the trial court." *In re Prop. Seized from Boughton*, No. 13-0327, 2014 WL 70300, at *2 (Iowa Ct. App. Jan. 9, 2014) (quoting *Chiodo*, 555 N.W.2d at 414). At the forfeiture hearing, the State has "the burden of proving by clear and convincing evidence that the property is subject to forfeiture." Iowa Code § 809A.13(7). "If the [S]tate so proves the property is subject to forfeiture, the claimant may assert that the claimant has an interest in the property which is exempt from forfeiture under [chapter 809A]." *Id.*

We first address the presumption claim. Forkner argues the State is not entitled to a presumption under Iowa Code section 809A.12. But, as the State points out, the district court did not apply any presumption under section 809A.12. *Cf. United States v. Barrett*, Nos. 96-50275, 96-50478, 1997 WL 664969, at *1 (9th Cir. Oct. 24, 1997) ("We need not rule on whether the statutory presumption in [21 U.S.C.] § 853(d) applies to forfeitures under [21 U.S.C.] § 853(a)(2) because the District Court did not base its decision on the statutory presumption."). Because the district court made no determination on this issue, we decline to address it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Next, we turn to the constitutional claims. Forkner raises constitutional claims under equal protection, due process, and excessive fines. The State argues error was not preserved on Forkner's excessive fines argument. We agree. Because Forkner did not raise this issue below, we again decline to address it. *See id.*; *State v. Grady*, No. 19-0865, 2020 WL 1049833, at *1 (Iowa Ct. App. Mar.

4, 2020) ("Our error preservation rules preserve judicial resources by allowing the district court the first opportunity to address an issue. It would be unfair to fault a district court on an issue it never had the opportunity to consider."). Additionally, Forkner's equal protection and due process claims stem from his claim relating to presumptions under Iowa Code section 809A.12(10)[2] and (11).[3] But, as previously noted, the district court did not apply those presumptions. Therefore, we need not address these claims either.

Forkner's final argument is that the district court, regardless of any presumption, erred in forfeiting his money. He further argues "[t]he State cannot prove by clear and convincing evidence the money [he] used to gamble [came] from illegitimate sources." "We examine the evidence in the light most favorable to the district court judgment and construe the district court's findings liberally to

---

[2] Iowa Code section 809A.12(10) states,

> The fact that money or a negotiable instrument was found in close proximity to any contraband or an instrumentality of conduct giving rise to forfeiture shall give rise to the presumption that the money or negotiable instrument was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate the conduct.

[3] Iowa Code section 809A.12(11) states,

> Subject to the exemptions contained in section 809A.5, a presumption arises that any property of a person is subject to forfeiture under this chapter if the state establishes any of the following:
>
> a. If the property to be forfeited is equal to or exceeds the minimum civil forfeiture amount, that the person engaged in conduct giving rise to forfeiture. If the property to be forfeited is less than the minimum civil forfeiture amount, that the person was convicted for the conduct giving rise to forfeiture.
>
> b. The property was acquired by the person during that period of the conduct giving rise to forfeiture or within a reasonable time after that period.
>
> c. No likely source for acquisition of the property exists other than the conduct giving rise to the forfeiture.

support its decision." *Chiodo*, 555 N.W.2d at 414. In its forfeiture ruling, the district court stated it was "convinced that Forkner's gambling habit was funded by his drug dealing."[4] The court went on to note "[t]he evidence is clear that Forkner lost over $36,000 in gambling" and "Forkner did not have legitimate income to support that significant of a loss." And the court was unconvinced Forkner had substantial savings because Forkner's financial affidavits in his criminal case did not indicate he had a savings account.

Upon review of the record, it seems undisputed that Forkner was not employed in 2016 or 2017. Also, he testified that his household's monthly income was $2000 with expenses ranging from $880 to $1030. At the forfeiture hearing, a special agent with experience and training with gaming and narcotics opined that someone "would need a substantial amount of income to have [the] amount of loss in a casino" that Forkner had accrued. Viewing this evidence "in the light most favorable to the district court judgment," it seems unlikely Forkner used legitimate funds to gamble. *See id.* Therefore, we conclude the evidence was not "utterly wanting to support the conclusion" of forfeiture. *See id.*

---

[4] Iowa Code section 809A.1(7) defines "[p]roceeds" as "property acquired directly or *indirectly* from, produced through, realized through, or caused by an act or omission and includes any property of any kind without reduction for expenses incurred for acquisition, maintenance, production, or any other purpose." (Emphasis added.) Forkner's casino winnings fall within the indirect category of proceeds. *Cf. United States v. Tolliver*, 949 F.3d 244, 249–50 (6th Cir. 2020) (upholding the forfeiture of gambling winnings after determining Tolliver's lack of income and increased gambling indicated "more likely than not that Tolliver gambled with laundered money"); *United States v. Betancourt*, 422 F.3d 240, 252 (5th Cir. 2005) (upholding the forfeiture of lottery ticket winnings when the lottery ticket was purchased with proceeds of drug trafficking).

**V. Conclusion**

We conclude the district court appropriately denied Forkner's motion to suppress and ordered forfeiture.

**AFFIRMED.**